EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Asociación de Condómines Condominio Balcones de Santa María Demandante-Recurrida v. Los Frailes, S.E. et al. Demandada-Peticionaria | Certiorari 2001 TSPR 116 154 DPR _____ |
| --- | --- |

Número del Caso: CC-1997-736

Fecha: 21/agosto/2001

Tribunal de Circuito de Apelaciones:
                              Circuito Regional I

Juez Ponente:
                    Hon. Ramos Buonomo

Abogado de la Parte Peticionaria:
                         Lcdo. Eduardo A. Betancourt

Abogado de la Parte Recurrida:
                         Lcdo. Ricardo Collazo Suarez

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Condómines
Condominio Balcones de
Santa María

    Demandante Recurrida

       v.                           CC-1997-736

Los Frailes, S.E. et al.

    Demandada Peticionaria

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico, a 21 de agosto de 2001

    Los Frailes S.E. (en adelante Los Frailes) recurre ante este Tribunal mediante recurso de certiorari de una sentencia del Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Dicho foro resolvió que la obligación por el pago de los gastos de administración y conservación, comúnmente conocidos como cuota de mantenimiento, del titular original de un inmueble sometido al Régimen de Propiedad Horizontal surge desde la fecha en la cual dicho inmueble es sometido al régimen. Como resultado, el titular original o administrador interino es responsable por el pago de las cuotas de mantenimiento de aquellos apartamentos en los cuales éste aparezca como dueño y que no hayan sido enajenados o individualizados como finca independiente, aun cuando éstos no estén físicamente construidos.

I

El condominio Balcones de Santa María es un inmueble compuesto de ciento veintiséis (126) apartamentos residenciales distribuidos en diez (10) edificios tipo "walk up". La construcción del mismo comenzó en 1988 y fue progresando paulatinamente.

El 21 de diciembre de 1989, la Administración de Reglamentos y Permisos (en adelante ARPE) otorgó permisos de uso para los primeros edificios terminados, integrados por dieciocho (18) apartamentos. Según fue progresando la construcción, ARPE concedió los permisos de uso correspondientes a cada apartamento, otorgándose el último permiso el 8 de mayo de 1991.

El inmueble fue sometido al Régimen de Propiedad Horizontal, mediante inscripción de su escritura matriz en el Registro de la Propiedad, el 28 de diciembre de 1989. Con el otorgamiento de la escritura de constitución del Régimen, Los Frailes asumió la administración interina del condominio. Durante su administración, Los Frailes pagó al condominio el mantenimiento correspondiente a los apartamentos de los cuales era titular desde la fecha en que se emitieron los respectivos permisos de uso para cada apartamento hasta que los mismos fueron vendidos.

A principios de 1990, un grupo de titulares residentes de los dos edificios terminados para ese momento, solicitó a la administración interina que contratara los servicios de un guardia de seguridad, a lo cual Los Frailes accedió.[1]

El 2 de enero de 1990 Los Frailes dio instrucciones al Banco Popular de Puerto Rico (en adelante Banco), entidad que brindó financiamiento al proyecto, para que al cierre de la venta de cada apartamento retuviese dos mensualidades de

---

[1] El costo de los guardias de seguridad del condominio estaba incluido en el presupuesto mensual sugerido de la administración interina, a un costo de $3,899.70.

cuotas mantenimiento, equivalentes a $128.00, para depositarlas en una cuenta de ahorros en dicho Banco, con el propósito de iniciar el fondo de reserva requerido en el capítulo 12 del Reglamento del Condominio.

A pesar de dichas instrucciones, el Banco solamente retuvo para el fondo de reserva la cantidad de $64.00 de cada uno de los ciento dieciséis (116) compradores a los cuales brindó financiamiento. Esta acción resultó en una deficiencia de $7,424.00 en la referida cuenta. Surge del testimonio del perito de la demandada que dichos fondos fueron depositados en la cuenta operacional de Los Frailes.

Entretanto los dueños de apartamentos celebraron una Asamblea Extraordinaria y eligieron una Junta de Directores, la cual Los Frailes se negó a aceptar. La Junta inició entonces un procedimiento administrativo ante el Departamento de Asuntos del Consumidor (en adelante DACO), el cual resultó en una orden para que Los Frailes transfiriera la administración del condominio a la Junta de Directores electa. El 12 de octubre de 1991 la Junta de Directores asumió la administración definitiva del condominio.

El 8 de abril de 1992, DACO determinó que Los Frailes omitió pagar cuotas de mantenimiento durante su administración, le impuso sanciones y una multa administrativa. Los Frailes solicitó reconsideración de dicha determinación. DACO entonces determinó que el caso era uno de cobro de dinero que debía ser llevado ante el Tribunal.

Así las cosas, el 27 de octubre de 1992, la Asociación de Condómines[2] del Condominio Balcones de Santa María (en

---

[2] Utilizamos el vocablo 'condómines' únicamente al referirnos al nombre oficial de la asociación. Cuando no es este el caso, utilizamos el término 'condóminos' por ser el correcto.

adelante Asociación) instó una demanda en cobro de dinero ante el Tribunal de Primera Instancia, reclamando las siguientes partidas: (1) $19,370 por concepto de dineros alegadamente mal utilizados en el pago de seguridad del condominio; (2)$1,000 por gastos de mantenimiento de las áreas comunales y de piscina; (3) $7,424 por alegadas deficiencias en el fondo de reserva del condominio y; (3) $69,440 por cuotas de mantenimiento dejadas de pagar por Los Frailes.

El tribunal de instancia dictó una sentencia mediante la cual declaró con lugar la demanda por todas las partidas reclamadas. Los Frailes apeló esta sentencia ante el Tribunal de Circuito. Éste confirmó la sentencia del tribunal de instancia en todos sus términos,[3] excepto en la responsabilidad por honorarios de abogado, ya que dicho foro determinó que Los Frailes no fue temeraria. De esta sentencia recurrió Los Frailes ante nos, señalando que:

Erró el ilustrado foro apelativo:

a. al concluir que la desarrolladora demandada est[á] obligada a pagar el mantenimiento correspondiente a apartamentos no construidos;

b. al determinar que la desarrolladora está obligada a pagar al condominio ciertas cantidades no depositadas en la cuenta de reserva comunal por el banco que estuvo obligado a hacerlo; y

c. al responsabilizar a la desarrolladora con gastos de vigilancia y seguridad del condominio incurridos durante la administración interina.[4]

Decidimos expedir el recurso y concedimos a la parte recurrida diez (10) días para presentar su alegato. Dicha

---

[3] No obstante, el Tribunal de Circuito devolvió el caso al tribunal de instancia, ya que determinó que de la sentencia del tribunal apelado no surgía con claridad de qué manera se había computado la responsabilidad de Los Frailes por concepto de cuotas de mantenimiento, ni tampoco el por ciento de participación que le correspondía a Los Frailes en los gastos comunes del inmueble. Esta información tampoco surgía de la escritura matriz del condominio que obraba en los autos del Tribunal de Circuito, ya que ésta estaba incompleta.

parte ha comparecido, y con el beneficio de sus argumentos procedemos a resolver.

II

Como ya expresáramos, la controversia principal que plantea este recurso es determinar si el titular de un apartamento proyectado y no construido está en la obligación legal de contribuir a los gastos comunes del condominio mediante el pago de cuotas de mantenimiento.

Para someter un inmueble al régimen de propiedad horizontal la Ley de Propiedad Horizontal, Ley Núm, 104 de 23 de junio de 1958, según enmendada, 31 L.P.R.A. secs. 1291 y siguientes (en adelante Ley de Propiedad Horizontal), exige que se haga constar la voluntad de los titulares en escritura pública y la inscripción de ésta en el Registro de la Propiedad, 31 L.P.R.A. sec. 1291. Por tanto, para resolver la controversia que nos ocupa debemos atender en primer lugar la interrogante de si un edificio proyectado y no comenzado a fabricar es susceptible de constitución en el régimen de propiedad horizontal mediante inscripción en el Registro de la Propiedad, ya que si no pudiese constituirse el régimen en un edificio meramente proyectado y no construido, no cabe hablar de responsabilidad alguna por concepto de cuotas de mantenimiento.

En cuanto a la inscripción de los apartamentos de un condominio, el Art. 82 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2303, establece que éstos "se inscribirán separadamente, con número distinto, con sujeción a las leyes especiales sobre la materia". En cuanto a este particular, la Ley de Propiedad Horizontal establece en su Art. 27 que "mientras

4    Petición de certiorari, pág. 4.

las obras no estén comenzadas sobre el suelo respectivo, no podrá inscribirse éste como finca filial o independiente." 31 L.P.R.A. sec. 1292e. Quiere esto decir que de acuerdo con la Ley Hipotecaria y la Ley de Propiedad Horizontal, un apartamento proyectado ubicado en un inmueble aún no comenzado a construir no puede ser objeto de inscripción.

No obstante, los comentaristas están de acuerdo en que la Ley de Propiedad Horizontal vigente, aunque no permite la inscripción de un apartamento meramente proyectado, sí permite que un edificio proyectado se someta al Régimen de Propiedad Horizontal mediante inscripción en el Registro de la Propiedad. En este sentido, Vázquez Bote señala que:

> "...solamente es Puerto Rico, con Brasil, el país que admite un edificio proyectado como fundamento fáctico de la propiedad horizontal."[5]

Godreau opina que "la delimitación del espacio aéreo por medio de un diseño arquitectónico concretado en unos planos específicos, junto con las correspondientes autorizaciones y permisos de las agencias concernidas, constituye un bien de valor económico significativo. De ahí que la ley permita la inscripción del edificio proyectado, independientemente de que la construcción del inmueble haya comenzado."[6].

En apoyo a su posición, Godreau explica que aunque la redacción del Art. 25[7] de la Ley de Propiedad Horizontal parece indicar que es necesaria la existencia real del edificio o la estructura para someter el inmueble al régimen,

---

[5]    Eduardo Vázquez Bote, Prolegómenos al régimen de la horizontalidad en el derecho puertorriqueño, Rev. Jur. UIA, Vol 12, 1977-78. Pág. 80.

[6]    Michel J. Godreau, El Condominio, San Juan, 1992, pág. 55.

[7]    El Art. 25 de la Ley dispone que "la inscripción de lo construido en el terreno se llevará a efecto en la finca en que aparezca inscrito y se denominará finca matriz" 31 L.P.R.A. sec. 1292c.

otras disposiciones de la Ley llevan a la conclusión de que tal interpretación no es acertada. Específicamente este autor señala que el Art. 26 de la Ley de Propiedad Horizontal establece que "al inscribirse el inmueble en la finca matriz se expresarán **las obras en proyecto**, las comenzadas y las realizadas según sea el caso." 31 L.P.R.A. sec. 1292d (Énfasis suplido.) Por otra parte, el Art. 28 indica que "las obras en proyecto o comenzadas, que hayan sido objeto de inscripción bajo esta ley... deberán declararse a su terminación en escritura pública." 31 L.P.R.A. sec. 1292f. Fundamentándose en estas disposiciones, Godreau concluye que "la ley contempla, pues, la posibilidad de inscribir un edificio proyectado".[8]

Por su parte, Vázquez Bote también admite la posibilidad de constituir propiedad horizontal en un inmueble meramente proyectado, señalando lo siguiente:

> El cubo de aire, polígono regular o irregular, que expresa el vuelo o columna sobre la superficie del suelo, puede quedar perfectamente delimitado como cosa...[9]

y más adelante concluye diciendo:

> Ese cubo de aire es una realidad del mundo exterior, susceptible de ser apropiada... [L]uego el cubo de aire vale, vale dinero, vale económicamente, vale jurídicamente. Su susceptibilidad de valor queda reconocida, tiene potencialidad para ello, pero sobre todo, tiene reconocido el Derecho su valor.[10]

---

[8] Godreau, op.cit., pág. 56. Godreau explica que el Reglamento Hipotecario dispone que en casos de propiedad horizontal, cuando se solicite constancia de la edificación sobre la finca inmatriculada, es necesaria un acta notarial en la cual se dé fe de la existencia del edificio, 30 L.P.R.A. sec. 2003-198. No obstante, esta disposición del reglamento hipotecario no impide que se inscriba un edificio proyectado, pues la sec. 2003-198 es aplicable a los casos en que se pretende la inscripción de edificios ya construidos.

[9] Eduardo Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, Tomo VIII, (1993), pág. 101.

[10] Íd. Pág. 104.

Así pues, Vázquez Bote concluye que el edificio proyectado no es sino polígono de aire y "cuando se hace referencia a ese edificio proyectado, lo que se contiene en la denominación no es la idea edificable, sino el polígono de aire que en su momento recogerá el edificio construido. Polígono de aire que, en cuanto cosa, puede ser basamento de un derecho real".[11]

De acuerdo con esta doctrina interpretativa de nuestra Ley de Propiedad Horizontal, la cual adoptamos, podemos concluir que la ley permite que se constituya el régimen en un edificio proyectado, siempre que la delimitación del mismo surja claramente de los planos y permisos correspondientes.

III

Nos corresponde ahora evaluar la controversia principal planteada en este caso: si un apartamento proyectado, es decir, no construido aún, está sujeto al pago de cuotas de mantenimiento.

El Condominio Balcones de Santa María es un condominio de la modalidad "walk up". Por la naturaleza de este tipo de estructura, al someterse el proyecto al régimen de propiedad horizontal, los edificios que contendrán los apartamentos van construyéndose escalonadamente.

Los Frailes, administradora interina del condominio Balcones de Santa María, adoptó como práctica el comenzar a pagar las cuotas de mantenimiento de los apartamentos de los cuales era titular una vez ARPE otorgaba los permisos de uso de los apartamentos, y continuaba pagando dichas cuotas hasta que los apartamentos eran enajenados. Alega Los Frailes que "en los condominios constituidos por varios edificios que van

---

[11]    Vázquez Bote, op. cit., pág. 105.

terminándose por etapas, el mantenimiento correspondiente a cada unidad sólo puede ser exigible cuan[d]o éstas son terminadas de fabricar y declaradas habitables con el correspondiente permiso de ARPE."[12]

Por su parte, los recurridos indican que no existe disposición alguna en la Ley, su reglamento, en la escritura matriz del condominio o el reglamento del condominio que exima a Los Frailes de cumplir con su obligación de pagar cuotas de mantenimiento. Sostienen que la ley y el reglamento imponen responsabilidad al titular del apartamento por el pago de cuotas de mantenimiento, sin excepción alguna.

Los recurridos también fundamentan su posición en las disposiciones contenidas en el Reglamento sobre Condominio promulgado por DACO el 2 de abril de 1978. La sec. 15 de dicho reglamento indica lo siguiente respecto a la responsabilidad del administrador interino:

> En el momento del traspaso del inmueble, del Administrador Interino a la comunidad de titulares, deberá entregar todos los libros debidamente auditados y certificados por un contador público autorizado...; específicamente desglosando las deudas vigentes **y las cuotas de mantenimiento que por ley venga obligada a aportar el Administrador Interino y no hayan sido pagadas.** (Énfasis suplido)

Lo que debemos determinar en este caso es precisamente si el administrador interino viene obligado por ley a pagar cuotas de mantenimiento por apartamentos no construidos de los cuales es titular, según la escritura matriz y los planos del condominio. Esto a la luz del principio de que "[L]a interpretación de la Ley de la Propiedad Horizontal debe ser "constructiva e imaginativa." Castle Enterprises, Inc. v. Registrador, 87 D.P.R. 775 (1963). Dicha interpretación debe ajustarse a la esencia de la horizontalidad: la coexistencia de diversos pisos de dominio exclusivo con el condominio

---

[12] Petición de Certiorari, pág. 4.

forzoso e inescapable de elementos comunes. <u>Álvarez Figueredo v González Lamela</u>, 138 D.P.R. 958 (1995); <u>Consejo de Tit. Cond. McKinley v. Rullán</u>, 126. D.P.R. 387 (1990).

### A.

La Ley de la Propiedad Horizontal establece lo siguiente en cuanto a la obligación de contribuir a los gastos comunes:

> (e) Todo titular deberá contribuir con arreglo al porcentaje de participación fijado a su apartamento en la escritura de constitución, y a lo especialmente establecido, conforme al inciso (e) del Artículo 38, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades. 31 L.P.R.A. sec. 1291m.

Esta obligación también está contemplada en el Art. 39 de la ley:

> Los titulares de los apartamentos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como cuantos más fueren legítimamente acordados. 31 L.P.R.A. sec. 1293C.

Este mismo artículo también establece que "ningún titular podrá liberarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca". 31 L.P.R.A. sec. 1293c. Así pues "la deuda tiene, por consiguiente, un carácter de verdadera obligación personal y no de las llamadas '*propter rem*', pues sabido es que con respecto a estas últimas la renuncia al derecho que se ostenta sobre la cosa, liberará al ex-titular de las deudas surgidas por razón de la misma cosa."[13]

El principio de contribución a dichos gastos es medular en el esquema establecido por la Ley de Propiedad Horizontal.

---

[13] Godreau, <u>op. cit.</u>, pág. 153.

Este Tribunal se ha expresado sobre la función e importancia que tienen las cuotas de mantenimiento para el adecuado sostenimiento de un inmueble sometido al régimen. En ese sentido, hemos señalado que "las cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen. Sin la aportación proporcional a las expensas del inmueble el régimen no puede sobrevivir y se derrotaría la política pública al respecto." <u>Maldonado v. Consejo de Titulares</u>, 111 D.P.R. 427 (1981); <u>Álvarez Cintrón v. J. Dir. Cond. Villa Caparra</u>, 140 D.P.R. 763 (1996).

La especial naturaleza de esta obligación queda demostrada en el hecho de que la Ley de Propiedad Horizontal de 1958 fue enmendada sustancialmente con el propósito de facilitar el cobro de las cuotas de mantenimiento.[14] Entre las disposiciones de la Ley de Propiedad Horizontal vigente que adelantan este propósito se encuentran el Art. 40 de la ley, 31 L.P.R.A. sec. 1293d, el cual otorga preferencia al Consejo de Titulares frente a cualquier otro acreedor por la deuda por concepto de cuotas de mantenimiento, y el Art. 41, que dispone que dicha deuda será un gravamen sobre cada apartamento, impone responsabilidad solidaria al adquirente de un apartamento que adeude cuotas de mantenimiento, y establece que la obligación del titular de un apartamento por su parte proporcional de los gastos comunes:

> [S]erá exigible a quien quiera que sea titular de la propiedad que comprende el apartamento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el registro de la propiedad, o enajenado a favor de persona alguna. 31 L.P.R.A. sec. 1293e.

---

[14] Sustitutivo al P. de la C. 1862, pág. 8.

Vemos pues como la Ley de Propiedad Horizontal vigente no deja dudas sobre el hecho de que el titular original del inmueble sometido al régimen de propiedad horizontal tiene la obligación de contribuir a los gastos comunes del mismo mientras existan apartamentos que no hayan sido enajenados, independientemente de si los mismos han sido objeto o no de inscripción. No obstante, la ley no especifica cuál es la responsabilidad del titular original, si alguna, por el pago de cuotas de mantenimiento cuando el edificio que se somete a propiedad horizontal no ha comenzado a construirse, o su construcción no a finalizado.

La doctrina no contempla específicamente este particular. En países de jurisdicciones civilistas, como España, la legislación sobre propiedad horizontal no parece contemplar la posibilidad de someter al régimen edificios o apartamentos no construidos y la legislación cubana, de la cual se deriva nuestra ley original de propiedad horizontal, tampoco contiene disposición alguna de la cual se pueda derivar la conclusión de que es posible la propiedad horizontal en apartamentos no construidos. Es por esta razón que no hemos podido encontrar casuística o doctrina que arroje luz sobre la controversia ante nos. Los comentaristas sobre nuestra ley de propiedad horizontal tampoco discuten la particular situación presentada en este recurso.

No obstante, este Tribunal tiene el deber de llenar las lagunas existentes en la ley, conforme al mandato del Art. 7 del Código Civil, 31 L.P.R.A. sec. 7. Cuando hay una laguna en la ley el juez no puede dejar de resolver un caso; éste deberá recurrir a la facultad de aplicar los principios de equidad. Toppel v. Toppel, 114 D.P.R. 775 (1983), Ef. Litográficos v. National Paper & Type Co., 112 D.P.R. 389 (1982). "Los tribunales estamos autorizados a interpretar

las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere...." <u>Banco Popular de P.R. v. Municipio de Aguadilla</u>, Op. de 29 de diciembre de 1997, 97 J.T.S. 152 (1997), <u>Pueblo v. Ortega Santiago</u>, 125 D.P.R. 203, 214 (1990).

Con este trasfondo fáctico y normativo analicemos la controversia de autos.

B.

Un análisis integral de las disposiciones de la Ley de Propiedad Horizontal antes expuestas con respecto a la responsabilidad por el pago de cuotas de mantenimiento nos lleva a la conclusión de que el criterio crítico para imponer dicha responsabilidad es la titularidad que sobre el apartamento se ostenta, y no el estado físico de éste.

La participación en los elementos comunes se establece en una proporción "equivalente al porcentaje que represente la superficie del apartamento en la superficie de la totalidad de apartamientos en el inmueble." 31 L.P.R.A. sec. 1291f. Así, para fijar la cuota de mantenimiento sólo es necesaria la escritura original en la cual se constituye el régimen, ya que en ésta constará la superficie de cada apartamento, haciendo posible la determinación de la proporción en los elementos comunes que corresponde a cada uno, **sin que sea necesario que el apartamento esté construido para determinar dicha cuota.**

Como ya señaláramos, la Ley de Propiedad Horizontal dispone que **"los titulares de los apartamentos** están

obligados a contribuir proporcionalmente a los gastos parar la administración, conservación y reparación de los elementos comunes..." 31 L.P.R.A. § 1293c. El Art. 41 reitera que **la obligación del pago de cuotas de mantenimiento corresponde al titular.** (Énfasis suplido).

Se puede colegir entonces que la Ley de Propiedad Horizontal no condiciona la responsabilidad por el pago de cuotas de mantenimiento a ningún otro criterio o circunstancia que no sea el **título de propiedad** sobre el apartamento. Así pues, según la ley, la titularidad es el factor fundamental al momento de determinar quién es responsable por el pago de las cuotas de mantenimiento.

Por otra parte, el Art. 5 de la Ley hace referencia directa a los elementos comunes en relación con apartamentos no construidos. Éste dispone que:

> En casos de transmisión o gravamen de un apartamiento proyectado y no comenzado a fabricar, se entenderá adquirida por el nuevo propietario, o gravada la participación que corresponda al transmitente, o en su caso, al deudor, en los elementos comunes del inmueble en proyecto, y el derecho de que tenga a que se le construya el apartamiento...31 L.P.R.A. sec. 1291c.

Este artículo configura al adquirente del apartamento proyectado o en construcción no terminada, como acreedor del derecho de construcción y del porcentaje de los elementos comunes ya existentes en el inmueble. En referencia a este artículo, se ha indicado que proyectada la construcción "se entenderá adquirida por el nuevo propietario la participación que corresponda al transmitente en los elementos comunes del inmueble en proyecto, así como el derecho que se le construya el apartamento".[15]

---

[15] José Ramón Vélez Torres, Curso de Derecho Civil, Tomo II, pág. 171.

Según lo dispone el Art. 5, el adquirente de un apartamento no construido en un inmueble sometido al régimen de propiedad horizontal tiene derecho a que, al momento de advenir titular del mismo, se le garantice la participación en los elementos comunes que se haya establecido para el apartamento antes de la transmisión del mismo. Esta garantía debe conllevar el correlativo deber de pagar de la cuota de mantenimiento por su participación en los dichos elementos comunes, aun cuando el apartamento específico del cual es dueño no esté construido aun.

Consideramos que esta es la mejor forma de lograr un balance justo y equitativo entre los derechos y deberes del titular de un apartamento no construido y los de aquellos titulares de apartamentos ya construidos, en relación con el uso y disfrute de los elementos comunes. Especialmente en casos como el de autos, en los cuales la construcción de los apartamentos es por etapas, resultaría particularmente injusto imponer la responsabilidad por el pago de las cuotas de mantenimientos solamente a los titulares de apartamentos ya construidos.

Quien compra un apartamento en un inmueble sometido al régimen de propiedad horizontal no tiene control de cuando terminarán de construirse todos los apartamentos. La única manera que tiene el consumidor para proyectar los gastos de mantenimiento que le corresponderá pagar es a través del por ciento de participación de su apartamento en los elementos comunes, según éste surja de la escritura matriz. Para determinar la cuota de mantenimiento correspondiente a cada apartamento se toma en consideración el total de apartamentos que se supone constituirán el inmueble, de acuerdo a la escritura en la cual se constituye el régimen. El regirse por el criterio de la existencia física del apartamento para

imponer la cuota de mantenimiento conllevaría el que los titulares de apartamentos ya construidos tendrían que absorber los gastos de mantenimiento durante todo el tiempo que le tome a la desarrolladora terminar todos los apartamentos proyectados, aumentando considerablemente el monto de dicha cuota en relación con lo que originalmente el consumidor había proyectado pagar.

De acuerdo con toda la exposición que antecede, concluimos que Los Frailes, como titular de apartamentos proyectados y no construidos en el condominio Balcones de Santa María, tenía la obligación legal de contribuir a los gastos comunes mediante el pago cuotas de mantenimiento mientras los apartamentos no estaban construidos. En ausencia de jurisprudencia o disposición de ley directamente aplicable a la situación de autos, ésta es la conclusión más acorde con el esquema establecido en la Ley de Propiedad Horizontal y con la trayectoria que ha seguido este Tribunal al interpretar dicha ley, y en especial las disposiciones relativas a las cuotas de mantenimiento.

Por último, la contención de Los Frailes de que cuando se concede el permiso de uso por parte de ARPE es que comienza la responsabilidad del titular de los apartamentos por el pago de cuotas de mantenimiento carece de méritos. Nada en la Ley de Propiedad Horizontal o su Reglamento sostiene dicha posición. Además, nos parece que siendo la solicitud y concesión de permisos de uso por parte de ARPE una práctica tan rutinaria en el régimen de propiedad horizontal, de haber considerado el legislador esta posibilidad, la hubiese consignado expresamente en la Ley. Por tanto, rechazamos dicha contención.

No obstante, la conclusión a la cual llegamos no dispone completamente de la controversia en relación con la

responsabilidad por el pago de cuotas de mantenimiento. Veamos.

C.

La Ley de Propiedad Horizontal establece que "el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago las sumas que éste adeude...". 31 L.P.R.A. § 1293e. Así, la aplicación automática de esta disposición convertiría a los posteriores adquirentes de apartamentos en el Condominio Balcones de Santa María solidariamente responsables por las cuotas de mantenimiento adeudadas por Los Frailes.

No obstante, las circunstancias particulares de este caso operan en contra de la aplicación de la referida norma de solidaridad. Esta es la primera vez que este Tribunal se expresa en relación con la responsabilidad por el pago de cuotas de mantenimiento que genera un apartamento no construido. Sería pues una grave injusticia imponerle a los adquirentes de los apartamentos una deuda solidaria por el pago de las referidas cuotas, cuando en realidad éstos no podían prever razonablemente que estaban adquiriendo un apartamento que arrastraba dicho gravamen.

Existe otra razón por la cual no se debe imponer responsabilidad solidaria a los subsiguientes adquirentes de los apartamentos en este caso. El Reglamento sobre Codominios, Expediente Núm. 2348 de 3 de marzo de 1978, (en adelante el Reglamento), establece que el administrador interino deberá prestar una fianza de fidelidad al momento de traspasar la administración del condominio a los titulares. Dicha fianza tiene el propósito de garantizar "el cien por ciento (100%) de las deudas vigentes al momento de ocurrir el traspaso, **y de las cuotas de mantenimiento que por ley venía**

**obligado [el administrador interino] a aportar y no había cubierto**". (Énfasis nuestro).

En cuanto a esta fianza, se ha dicho que "conviene que el Comité de Transición insista en que el Administración Interino cumpla con el requisito... relativo a la prestación de una fianza de fidelidad".[16] Esta fianza tiene una vigencia de noventa (90) días, dentro de los cuales debe realizarse el examen de los libros de contabilidad y contratos de la administración interina "de forma que no expire la garantía y el Consejo no corra el riesgo de ver una reclamación legítima tornarse en académica por la insolvencia de dicho administrador."[17]

No surge del expediente del caso que Los Frailes haya prestado la referida fianza al momento del traspaso de la administración. Tampoco existe prueba alguna a los efectos de que la Junta de Directores o algún Comité de Transición haya exigido dicha fianza a Los Frailes. Al así actuar, la Asociación no garantizó efectivamente el pago las sumas que Los Frailes le adeudase luego del traspaso.

Esto no significa que por razón de no haber exigido la fianza, la Asociación esté impedida de exigirle a Los Frailes el pago de las cuotas de mantenimiento adeudadas, ya que la sec. 17 del Reglamento indica que "nada de lo dicho en este Reglamento se entenderá como una limitación de la responsabilidad del Administrador Interino bajo las Leyes aquí citadas y otras Leyes y Reglamentos cuando éste desempeñe éstas u otras funciones". Así, el que Los Frailes no haya prestado la fianza de aseguramiento, ni la Asociación se le haya exigido, no exime a Los Frailes de la

---

[16] Godreau, op. cit., pág. 67.

[17] Íd.

responsabilidad por las deudas en las que incurrió durante su administración interina. No obstante, si Los Frailes adviniera insolvente y no pudiese pagar la deuda por cuotas de mantenimiento, la Asociación no puede recobrar dichas cuotas de los posteriores adquirentes de los apartamentos, no sólo porque, como ya hemos indicado, es inherentemente injusto imponerle a éstos responsabilidad solidaria por una deuda que no podían razonablemente prever, sino también porque, al no exigir la referida fianza de aseguramiento, la Asociación se colocó en una posición de franca desventaja, poniendo además en riesgo el patrimonio de todos los posteriores adquirentes de los apartamentos.

Por último, entendemos que el asunto planteado en este caso debe ser objeto de estudio por parte de la legislatura, a la luz del esquema establecido en la Ley de Propiedad Horizontal y su Reglamento, de manera que la ley atienda el tipo de situación presentada en este caso. De esta manera, se logrará establecer mayor uniformidad, balance y certeza en el régimen de propiedad horizontal.

IV

En su segundo y tercer planteamiento de error, Los Frailes alega que no es responsable por el pago de la deficiencia de fondos en la cuenta de reserva del condominio Balcones de Santa María, ni es responsable por los gastos de seguridad incurridos por el condominio durante el tiempo que duró la administración interina. Por estar relacionados, consideraremos en conjunto ambos señalamientos.

La Ley de Propiedad Horizontal de 1976 estableció unas normas generales sobre la responsabilidad del administrador interino de un edificio sometido al régimen de propiedad

horizontal. El Art. 36-A de la Ley, en lo pertinente, dispone que:

> El titular o los titulares que sometan el inmueble al régimen de propiedad horizontal, asumirán la administración inicial del inmueble, con todos los poderes y deberes que esta ley confiere e impone, y los que el Reglamento confiera e imponga al Director o a la Junta de Directores, al Presidente y al Secretario. 31 L.P.R.A. sec. 1293-1

Las responsabilidades y deberes del Director o Junta de Directores de un condominio sometido al régimen se encuentran enumerados en el Art. 38 de la Ley, 31 L.P.R.A. sec. 1293b-4. En lo pertinente, esta sección dispone que:

> El Director o la Junta de Directores... tendrá los siguientes deberes y facultades:
>
> (a) Atender todo lo relativo con el buen gobierno, administración, **vigilancia** y funcionamiento del régimen... (Énfasis suplido.)
>
> (e) Abrir una cuenta bancaria a nombre de la comunidad de condómines (sic), en la cual **depositará todos los ingresos del régimen** realizando los depósitos dentro del término de su recibo que fije el Reglamento... (Énfasis suplido.)

Como puede observarse, el Director o Junta de Directores tienen el deber legal de atender la vigilancia del condominio y de depositar los fondos del mismo en la cuenta bancaria correspondiente, según se establezca en el Reglamento del condominio. Por virtud del Art. 36-A de la ley, el administrador interino tiene exactamente la misma responsabilidad.

En cuanto a los gastos de vigilancia del condominio incurridos por Los Frailes durante la administración interina, el Tribunal de Instancia determinó que no obstante el hecho de que un grupo de titulares residentes solicitó a la administradora interina que contratara los servicios de un guardia de seguridad, la prueba estableció que la desarrolladora mantenía materiales y equipo de construcción

en las áreas adyacentes al inmueble. Además, para la fecha en que se solicitó dicha vigilancia, los intercomunicadores del edificio no estaban instalados.

Ante esta situación, el tribunal sentenciador concluyó que los condóminos necesitaban la vigilancia solicitada. La prueba también estableció que Los Frailes se benefició de dicha vigilancia, ya que la misma protegía los materiales y equipos utilizados en el desarrollo.

De acuerdo con estos hechos, y ante la obligación específica que establece la Ley de Propiedad Horizontal en cuanto al deber del administrador interino del condominio por la vigilancia del mismo, concluimos que Los Frailes es responsable por los gastos de vigilancia incurridos durante su administración.

Por último, Los Frailes alega que no es responsable por las deficiencias en el fondo de reserva del condominio. Según se desprende de los hechos, Los Frailes instruyó al Banco que retuviese a los compradores dos mensualidades de cuotas de mantenimiento, o sea, $128.00, para destinarlas al fondo de reserva establecido en el reglamento del condominio. Sin embargo, el Banco retuvo de los compradores sólo la cantidad de $64.00 para destinarlas a la reserva, en lugar de los $128.00 requeridos. Esta situación provocó una deficiencia de $7,424.00. Surge de los hechos que el resto del dinero que se supone se hubiese depositado en el fondo de reserva, fue depositado en la cuenta operacional de Los Frailes.

La Asociación sostiene que la administradora interina es responsable por suplir la deficiencia en el fondo de reserva. Por su parte, Los Frailes alega que, bajo la doctrina del

enriquecimiento injusto,[18] no está obligada a reponer dichos fondos, ya que los mismos fueron utilizados por el Condominio en beneficio de éste.

Como ya hemos expresado, la ley le impone la responsabilidad al Administrador Interino de un condominio de depositar los fondos del mismo en la cuenta correspondiente. Además, el Reglamento de DACO para Reglamentar las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico, con vigencia al 16 de septiembre de 1977, dispone en su sec. 19 lo pertinente en cuanto a las cuentas especiales de reserva o depósito ("escrow account") y establece la responsabilidad de todo urbanizador o constructor de un inmueble de depositar "las cantidades de dinero adelantadas por el comprador para el Fondo de Reserva de Gastos de Mantenimiento del Condominio que se entregan al momento de la firma de la escritura de compraventa".

El reglamento establece además que "[e]stas cantidades de dinero se mantendrán separadas del resto de los fondos de operación del urbanizador y/o constructor".  En casos de apartamentos bajo propiedad horizontal, estos fondos deben ser entregados a la Junta de Directores una vez se constituya la misma.

Es evidente, según surge de las disposiciones de ley y reglamento, que Los Frailes era responsable de que el dinero destinado al fondo de reserva del condominio fuera depositado en dicha cuenta en su totalidad.  Era deber de Los Frailes percatarse de que el Banco estaba cometiendo un error, y procurar que se depositaran los fondos de la reserva

---

[18] Entendemos que este planteamiento no tiene méritos, debido a que la responsabilidad de Los Frailes por la deficiencia en el fondo de reserva surge de su deber legal como administradora interina del condominio.

correctamente. En consecuencia, Los Frailes está en la obligación de satisfacer la deficiencia en la reserva, más los intereses correspondientes. El administrador interino es quien responde frente al Condominio por la administración de los fondos de reserva y era el deber de dicho administrador velar que el Banco cumpliera con su función.

V

En conclusión, resolvemos que Los Frailes, como titular de los apartamentos proyectados y no construidos, es responsable por el pago de cuota de mantenimiento de dichos apartamentos, hasta el momento en que éstos fueron enajenados. Además, como administradora interina, Los Frailes es responsable del pago por gastos de seguridad y deberá, en adición, satisfacer las deficiencias existentes en el fondo de reserva del condominio. Así, se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí expuesto.

Miriam Naveira de Rodón<br>Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Condómines
Condominio Balcones de
Santa María

    Demandante Recurrida.

       v.                       CC-1997-736

Los Frailes, S.E. et al.
    Demandada Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 21 de agosto de 2001

    Por los fundamentos expuestos en la Opinión que antecede, se confirma la sentencia emitida por el Tribunal de Circuito de Apelaciones. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri concurren con el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo