*1027 TEXTO COMPLETO DE LA RESOLUCIÓN
Comparece ante nos Bernardo P. Bandelier (Bandelier) mediante recurso de revisión administrativa presentado el 13 de octubre de 2006. Solicita la revocación de la Resolución emitida por el Departamento de Asuntos del Consumidor (DACO) el 1ro de junio de 2006, notificada y archivada en autos el 2 de junio de 2006, en la que desestimó la querella presentada por Bandelier al amparo de la Ley de Condominios, Ley Núm. 104 de 25 de junio de 1958, según enmendada.
I
Conforme a las determinaciones de hechos formuladas por el DACO, el 4 de octubre de 2005, Bandelier y Monteclaro, S.A. otorgaron escritura de compraventa mediante la cual el primero advino titular del apartamento 1007 del Condominio Caribbean Towers. Según un estudio de título realizado el 9 de septiembre de 2005 en el Registro de la Propiedad no había anotado ningún embargo ni otro gravamen por obligaciones incumplidas por los anteriores titulares del apartamento relacionadas con el mantenimiento u otras obligaciones comunales.
Surge de las determinaciones de hechos, que al momento de Bandelier adquirir el apartamento la unidad había acumulado una deuda por concepto de cuotas de mantenimiento, derrama y primas de seguro catastrófico matriz impagadas por el titular anterior. En consecuencia, los servicios de agua y electricidad se encontraban suspendidos pendientes a la realización del pago total adeudado. La Junta de Directores del Condominio Caribbean Towers (Junta de Directores) le requirió a Bandelier el pago de la suma de catorce mil setecientos treinta y tres dólares con setenta y seis centavos ($14,733.76), importe de intereses, penalidades y recargos adeudados por los anteriores titulares del apartamento 1007.
El 21 de octubre de 2005, Bandelier presentó querella ante el DACO en contra de la Junta de Directores. En la misma alegó que para la fecha que adquirió el apartamento 1007 no se había anotado en el Registro de la Propiedad ningún embargo ni otro gravamen por las obligaciones incumplidas por los titulares anteriores del inmueble. Que la Junta de Directores le había requerido el pago de la suma adeudada y le había suspendido los servicios de agua y electricidad. Según Bandelier, la reclamación de la Junta de Directores era contraria al Artículo 41 de la Ley de Condominios, supra, por lo que solicitó que se ordenara a dicho organismo que se abstuviera de cobrar los balances adeudados por los titulares anteriores y se restauraran los servicios. También solicitó el pago de costas, gastos y honorarios de abogados.
El 14 de noviembre de 2005, la Junta de Directores presentó su contestación a la querella en la que solicitó la desestimación de la misma. Señaló que Bandelier había adquirido voluntariamente el inmueble y que el *1028 era Artículo 41 de la Ley de Condominios, supra, disponía que el adquirente voluntario de un apartamento_ solidariamente responsable con el transmitente del pago de las sumas que éste adeudase hasta el momento de la transmisión.
El 25 de enero de 2006, las partes renunciaron a la vista administrativa y sometieron unos memorandos de derecho por no existir controversia real en cuanto a los hechos. Ambas partes sometieron el caso por el expediente.
El 1 de junio de 2006, notificada el 2 de junio de 2006, el DACO emitió Resolución en la que concluyó que Bandelier fue un adquirente voluntario del vendedor del apartamento 1007, por lo que conforme al Artículo 41 de la Ley de Condominios, supra, éste respondía solidariamente con sus vendedores por la cantidad adeudada por concepto de cuotas de mantenimiento, derramas y primas de seguros impagadas por el titular anterior. También concluyó que el hecho de que la deuda del titular anterior del inmueble no estuviese inscrita como gravamen en el Registro de la Propiedad, no eximía a Bandelier de su responsabilidad como adquirente voluntario. En virtud de lo anterior, el DACO desestimó la querella presentada.
Oportunamente, el 19 de junio de 2006, Bandelier presentó Moción de Reconsideración.
El 22 de junio de 2006, notificada el 23 de junio de ese mismo mes y año, el DACO emitió Resolución mediante la cual tomó conocimiento de la referida solicitud de reconsideración. No obstante, la agencia no resolvió dicha solicitud dentro de los noventa (90) días de ésta haber sido presentada, según dispuesto en la sección 3.15 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. see. 2165.
_ 13 de 0ctubre de 2006, Bandelier presentó el recurso de revisión administrativa que nos ocupa en el que señaló la comisión del siguiente error:

“Erró el Departamento de Asuntos del Consumidor al desestimar la querella en este caso por el fundamento deque conforme al Artículo 41 de la Ley de Condominios (31 LPRA 1293e), “luego de la primera venta, el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude,” (ap.p. 62) aunque la deuda no esté anotada en el Registro de la Propiedad; por ser dicha conclusión manifiestamente contraria al texto claro de dicho precepto, según recientemente enmendado por la Ley Núm. 103 del 5 de abril de 2003. ”

II
Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales. Vélez Rodríguez v. ARPE, 167 D.P.R. _, 2006 JTS 78, a la página 1249, Opinión de 21 de abril de 2006; Otero Mercado v. Toyota de Puerto Rico, 163 D.P.R. _, 2005 JTS 13, a las páginas 684-685, Opinión de 3 de febrero de 2005; Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 122-123 (2000); Assoc. Ins. Agencies, Inc. v. Com. de Seguros, 144 D.P.R. 425, 436 (1997). Debemos ser cautelosos al intervenir con las determinaciones administrativas, debido a que las agencias poseen la experiencia y los conocimientos altamente especializados que se encuentran dentro del ámbito de sus facultades y responsabilidades. Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ 2004 JTS 4, a las páginas 501-502, Opinión de 13 de enero de 2004; Pacheco Torres v. Estancias de Yauco, 160 D.P.R. _, 2003 JTS 150, a las páginas 210-211, Opinión de 30 de septiembre de 2003. Por tanto, se establece una presunción de legalidad y corrección a favor de las agencias administrativas. A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones, 124 D.P.R. 858, 864 (1989); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
No obstante, la deferencia judicial en la revisión de las determinaciones administrativas no conlleva la renuncia de los tribunales a su función revisora. Tan sólo implica que dicha función es de carácter limitado, la cual sólo se ejercerá en los casos apropiados. Tal intervención sólo estará justificada cuando la agencia obre de *1029 manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, cuando la determinación no se sostenga mediante prueba sustancial, o cuando se haya cometido un error en la aplicación de la ley. Fuertes v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Murphy Bernabé v. Tribunal Superior, supra, a la página 699.
Como norma básica, los tribunales tenemos la obligación de exigir que la conclusión administrativa se apoye explícitamente en la razón y en la ley. Además, de formar parte de un patrón integrado de reglamentación. South P.R. Sugar Co. v. Junta, 82 D.P.R. 847, 865 (1961). Debemos indagar sobre la razonabilidad de la decisión administrativa y no sustituir el criterio de dicho organismo a menos que se infrinjan valores constitucionales fundamentales. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993).
En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implanta. Torres v. J. Exam. Ing. Arq. y Agrim., 161 D.P.R. _, 2004 JTS 71, a la página 972, Opinión de 27 de abril de 2004; O.E.G. v. Rodríguez y otros, 158 D.P.R. _, 2003 JTS 51, a la página 798, Opinión de 1ro de abril de 2003.
III
En reiteradas ocasiones, el Tribunal Supremo ha señalado, como principio rector en materia de hermenéutica, que “al interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener”. Asoc. de Condómines Quadrangle Medical Center y otros v. Ramírez Lizardi, 154 D.P.R. 699, 706-707 (2001); Vázquez v. A.R.P.E., 128 D.P.R. 513, 523-524 (1991). Nuestra obligación consiste en imprimirle efectividad a la intención del legislador, para así garantizar que se cumpla con el propósito para el cual fue creada la medida. Asoc. de Condómines Quadrangle Medical Center y otros v. Ramírez Lizardi, supra, a las páginas 706-707; Vázquez v. A.R.P.E., supra, a las páginas 523-524.
Con el fin de cumplir con esta obligación, inicialmente debemos atender el texto de la ley; en otras palabras, y conforme establece el Artículo 14 del Código Civil, cuando “...la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu". 31 L.P.R.A. sec. 14. Asoc. de Condómines Quadrangle Medical Center y otros v. Ramírez Lizardi, supra, a las páginas 706-707.
IV
En Puerto Rico existe una clara política pública en favor de la utilización de edificios multipisos sometidos al Régimen de Propiedad Horizontal como unidades de vivienda, para aprovechar eficientemente los escasos terrenos disponibles en áreas densamente pobladas. Asoc. de Condómines Quadrangle Medical Center y otros v. Ramírez Lizardi, supra, a la página 707; Álvarez Figueredo v. González Lamela, 138 D.P.R. 958, 965 (1995).
La Ley de Propiedad Horizontal, Ley Núm. 104 del 25 de junio de 1958, fue enmendada sustancialmente por la Ley Núm. 103 de 5 de abril de 2003, que se denominó como Ley de Condominios. La Asamblea Legislativa de Puerto Rico promulgó la nueva Ley con el propósito de fortalecer el régimen de propiedad horizontal y de adecuarlo a la realidad social del país. Según surge de la Exposición de Motivos de la Ley Núm. 103, supra, la revisión del régimen ya había estado en agenda legislativa durante algún tiempo, porque el legislador estaba consciente de que el régimen necesitaba “ajustes a fin de dotarlo de mayor eficacia”.
La nueva de Ley de Condominios reafirmó en su Exposición de Motivos los principios básicos del régimen de propiedad horizontal y mantuvo las características fundamentales de éste. Entre éstos se encuentran el disfrute del apartamento como núcleo del régimen, el principio de que sea el Consejo de Titulares el organismo en el que resida el control último sobre las decisiones relacionadas con la administración del inmueble, el *1030 reconocimiento de la personalidad jurídica del referido Consejo y la disponibilidad de un foro especializado para atender con agilidad los conflictos que puedan surgir entre los integrantes del régimen.
En lo aquí pertinente, como parte de las particularidades de este régimen legal, el Artículo 15, inciso (f) de la Ley de Condominios, 31 L.P.R.A. sec. 1291m, establece la obligación de los titulares de contribuir a los gastos comunes, al disponer:

(Todo titular deberá contribuir con arreglo al porcentaje de participación jijado a su apartamiento (sic) en la escritura de constitución, y a lo especialmente establecido, conforme al inciso (f) del Artículo 38, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades, incluidas las derramas, primas de seguros, el fondo de reserva, o cualquier otro gasto debidamente aprobado por el Consejo de Titulares’’.

El principio de contribución al pago de mantenimiento y administración de los elementos comunes constituye piedra angular del Régimen de Propiedad Horizontal. En ese sentido, ha señalado el Tribunal Supremo, que las cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del Régimen. Sin la aportación proporcional a las expensas del inmueble, el Régimen no puede sobrevivir y se derrotaría la política pública al respecto". Asoc. Condominio Balcones de Santa María v. Los Frailes, S.E. 154 D.P.R. 800, 815 (2001); Álvarez Cintrón v. Junta de Directores Cond. Villa Caparra 140 D.P.R. 763, 769 (1996).
A estos efectos, el legislador estableció el tiempo y manera en que se hará exigible la contribución a los gastos comunes. El Artículo 39, 31 L.P.R.A. sec. 1293c, en lo pertinente dispone que:

Los titulares de los apartamientos (sic) están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados.

Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento (sic) que le pertenezca, ni por haber incoado una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de Directores por asuntos relacionados con la administración o el mantenimiento de las áreas comunes, salvo que el tribunal o foro competente así lo autorice.

La cantidad proporcional con que debe contribuir cada titular a los gastos comunes se determinará, fijará e impondrá al principio de cada año calendario o fiscal y vencerá y será pagadera en plazos mensuales. El Reglamento podrá disponer el cobro de una penalidad del diez por ciento (10%) de lo adeudado si transcurren quince (15) días de la fecha fijada para el pago de la mensualidad. En el caso de las deudas del Estado Libre Asociado, el término será de ciento veinte (120) días. En exceso de ese término, la penalidad será de un doce por ciento (12%) de la totalidad de la deuda. El Estado Libre Asociado quedará exento del pago de dicha penalidad cuando se trate de residenciales públicos. Además, las cuotas que los titulares no cubran dentro del plazo fijado para su pago, devengarán intereses al tipo máximo legal. La falta de pago de tres o más plazos consecutivos conllevará una penalidad adicional equivalente al uno por ciento mensual del total adeudado.

El titular moroso será requerido de pago mediante correo certificado con acuse de recibo y de no verificar el pago en el plazo de quince (15) días, se le podrá exigir por la vía judicial.

La deuda de un titular por concepto de gastos comunes se le podrá reclamar judicialmente con arreglo al procedimiento abreviado y hasta el límite dispuesto bajo la Regla 60 de Procedimiento Civil, según 
*1031
enmendada.

Aquellos titulares que adeuden tres (3) o más plazos consecutivos de cuotas, independientemente del número de apartamientos [sic] de que sean propietarios, quedaran temporalmente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares, incluidos aquellos asuntos que requieran el consentimiento unánime; ni se contará su voto o su porcentaje de participación para propósitos de quorum cuando este capítulo requiera tal consentimiento, hasta tanto satisfagan la deuda en su totalidad o el Tesorero certifique que el titular está al día en el plan de pago aprobado por la Junta de Directores con anterioridad a la asamblea en cuestión. Además, la Junta de Directores podrá ordenar la suspensión del servicio de agua potable, electricidad, gas, teléfono, así como los servicios de transmisión de voz, video y data, y/o cualquier otro servicio similar cuando el suministro de éstos llega por medio de instalaciones que constituyen elementos comunes generales del inmueble. La suspensión podrá ordenarse también cuando el titular no pague su parte proporcional del seguro comunal.

De similar modo, el Artículo 41 de la Ley de Condominios, 31 L.P.R.A. sec. 1293e, dispone, en lo pertinente:

“La obligación del titular de un apartamiento (sic) por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento (sic), una vez anotado en el Registro de la Propiedad. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamiento (sic) será solidariamente responsable con el transmitente del.pago de las sumas que este adeude, a tenor con la sec. 1293c de este título, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. Sin embargo, un adquirente involuntario será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los seis meses anteriores al momento de adquirir la propiedad.

La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamiento (sic), aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna. Cualquier institución financiera que provea un fimanciamiento interino a una persona para la construcción de apartamientos (sic) y elementos comunes a ser sometidos o sometido al régimen de propiedad horizontal y se convierta en dueño del inmueble en un procedimiento de ejecución o dación en pago, no será considerada como desarrollador, administrador interino o constituyente del régimen conforme dispone este capítulo, siempre y cuando la institución financiera no rebase sus funciones usuales de un acreedor en la protección de su garantía de conformidad con las prácticas comerciales seguidas por instituciones financieras que proveen financiamiento interino de construcción de entidad financiera. ” 

El artículo antes citado impone responsabilidad solidaria al adquirente voluntario y al transmitente de un apartamento sujeto al régimen de propiedad horizontal por las cuotas de mantenimiento no pagadas al momento de la transmisión.
Un adquirente voluntario es un comprador convencional, un donatario, un permutante o un licitador que se lleva la buena pro en la subasta. Asoc. de Condómines v. Naveira, 106 D.P.R. 88, 96-97 (1977). Por el contrario, un adquirente involuntario es aquél que adviene dueño al ejercer los créditos preferentes que señala el Artículo 40 de Ley de Condominios, a saber, los créditos a favor del Estado Libre Asociado de Puerto Rico, por la prima del seguro de dos años y los créditos hipotecarios inscritos en el registro de la propiedad. Id., 31 L.P.R.A. see. *1032 1293d. La razón de esta distinción, se encuentra básicamente en el interés fundamental al momento de adquirir la propiedad. El adquirente involuntario es primariamente un acreedor sin interés de convertirse en el dueño del apartamento. Su interés primordial es proteger su acreencia constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio. Por otro lado, el adquirente voluntario es un comprador informado de los gravámenes y cargas del apartamento. Este tiene la oportunidad y medios para enterarse de la deuda por-gastos comunes y poder de decisión para asumirlos como gravamen del inmueble que adquiere. Asoc. de Condómines v. Naveira, supra, a la página 97.
y
En su escrito, Bandelier alegó que de conforme al Artículo 41, según enmendado por la Ley de Condominios, la solidaridad por gastos comunales entre el trasmitente y el adquirente voluntario de un apartamento requiere que la deuda sea anotada en el Registro de la Propiedad. Planteó que al añadirle a dicho artículo la frase “una vez anotado en el Registro de la Propiedad’, ello demuestra la intención del legislador de exigir la anotación registral previa de la deuda como requisito para la existencia de la solidaridad. No le asiste en la razón.
El Artículo 41, tanto antes como después de la enmiendas efectuadas a la Ley de Propiedad Horizontal mediante la Ley Núm. 103 conocida como Ley de Condominios, establece que tanto el adquirente voluntario como el transmitente de un apartamento sujeto al régimen de propiedad horizontal son responsables solidariamente por las cuotas de mantenimiento no pagadas, sin perjuicio del derecho del adquirente voluntario a repetir contra el otro por las cantidades que hubiese pagado como deudor solidario.
Si bien es cierto que como parte de la enmienda al Artículo 41 se incluyó la frase “una vez anotado en el Registro de la Propiedad’, ello no puede interpretarse como que la inscripción de la deuda en el registro es indispensable para que se le pueda reclamar al adquirente voluntario de un apartamento sometido al régimen de propiedad horizontal las cantidades adeudadas por un titular anterior por concepto de los gastos comunes.
Es claro que la inscripción de dicha deuda en el Registro de la Propiedad es necesaria para que ésta adquiera eficacia real de gravamen de manera tal que el bien pueda ejecutarse en cobro de la misma. El Tribunal Supremo, anteriormente en el caso Vázquez Morales, etc. v. Caguas Federal Savings & Loan Association of P. R., Etc., 118 D.P.R. 806, 811-812 (1987), señaló que:
“...[L]a Ley Hipotecaria de 1979, Ley Núm. 198 de 8 de agosto de 1979, según enmendada, a través de los principios de publicidad y especialidad, Arts. 101 y 87 de dicha ley, supra, 30 L.P.R.A. secs. 2351 y 2308, no admite la existencia de gravámenes ocultos; por lo que para que pueda adquirir eficacia real el ""gravamen" que menciona el Art. 41, supra, es necesario que el mismo se anote en el Registro de la Propiedad. De inscribirse el gravamen, el mismo estaría sujeto a lo dispuesto en el Art. 1827 del Código Civil, 31 L.P.R.A. see. 5212 y en el Art. 136 de la Ley Hipotecaria, supra, 30 L.P.R.A. sec. 2460 n7, que tienen el efecto de liberar el inmueble de cargas en caso de que el producto de la venta del mismo no alcance para satisfacer el importe de los créditos preferentes. ’’
Ciertamente, la obligación de pago de los gastos comunes no surge de la anotación registral, sino de la propia Ley de Condominios que, repetimos, dispone que el adquirente voluntario y el transmitente del apartamento serán solidariamente responsables por las cuotas de mantenimiento no pagadas. Por consiguiente, aun sin constar inscrita en el registro la deuda por gastos comunes, las cuotas de mantenimiento constituyen una deuda exigible al adquirente voluntario. Inclusive la Ley de Condominios dispone otras formas para facilitar el cobro de dichas deudas, como por ejemplo, la suspensión de servicios públicos recibidos a través de los elementos comunes generales, tales como luz y agua, en aquellos apartamentos cuyos titulares adeuden dichas cuotas. Véase, Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 432-433 (1981).
*1033 En el caso de autos, según surge de la resolución recurrida, Bandelier fue un adquirente voluntario del apartamento 1007 del Condominio Caribbean Towers. El DACO concluyó correctamente en su resolución que el hecho de que la deuda por los gastos comunes del titular anterior no estuviese inscrita en el Registro de la Propiedad, no eximía a Bandelier de su responsabilidad solidaria como adquirente voluntario por la deuda. Resolvemos, que no erró el DACO al desestimar la querella presentada por Bandelier.
YI
Por todo lo anteriormente expuesto, confirmamos la resolución recurrida en la que el DACO desestimó la querella presentada por Bandelier.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 46
1. Dicha propiedad corresponde a la finca núm. 5582 inscrita al folio 175 del tomo 181 de Santurce Sur de la Sección Primera de San Juan del Registro de la Propiedad.
2. El Artículo 41 previo a la enmienda de 2003 disponía:

“La obligación del titular de un apartamiento (sic) por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento (sic). Por lo tanto, el adquirente voluntario de un apartamiento (sic) será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 39 de esta ley, hasta el momento de la trasmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario.

La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamiento (sic), aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna. ”