# 2009 DTA 99

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL III**

CARLOS MUÑIZ CRUZ
Querellante-Recurrido

v.

JUNTA DE DIRECTORES DEL CONDOMINIO LOS PINOS,
REPRESENTADA POR SU PRESIDENTE IBSEN RAFAEL SANTIAGO
Querellado-Recurrente

Núm. KLRA-2009-00401

San Juan, Puerto Rico, a 6 de julio de 2009

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Cordero Vázquez y Cortés Trigo

Bajandas Vélez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos la Junta de Directores del Condominio Dos Pinos (la Junta o la recurrente) mediante el recurso de epígrafe. Nos solicita que revoquemos la resolución emitida y notificada por el Departamento de Asuntos del Consumidor (el DACO) el 3 de febrero de 2009. Por medio de dicha resolución, el DACO declaró nulo e ilegal el acuerdo alcanzado en la asamblea del Consejo de Titulares del Condominio Los Pinos (el Consejo de Titulares) celebrada el 22 de mayo de 2007. En consecuencia, ordenó que en un término de cuarenta y cinco (45) días, a partir de la notificación de la referida resolución, la Junta celebrara una asamblea extraordinaria del Consejo de Titulares con el propósito de decidir acerca de la instalación de un sistema de llavines en los ascensores del condominio.

Analizado el recurso y el derecho aplicable, resolvemos confirmar la resolución recurrida.

### I

El Sr. Carlos Muñiz Cruz (el Sr. Muñiz Cruz o el recurrido) es cotitular del apartamento 1-F del Condominio Los Pinos (el Condominio) localizado en el Municipio Autónomo de Carolina.

El Condominio fue sometido al régimen de propiedad horizontal por medio de la escritura número 31 otorgada el 6 de septiembre de 1976 ante el notario Frank Vizcarrondo Vivas. El Condominio es un complejo residencial con dos torres y un total de 298 apartamentos.

La Junta, por medio de su entonces presidente el Sr. Leonardo Campo, convocó una asamblea extraordinaria del Consejo de Titulares para el 21 de mayo de 2007 a las 7:00 PM en primera convocatoria y para el 22 de mayo de 2007 a la misma hora, en segunda convocatoria. La convocatoria está firmada por su presidente, pero no tiene

fecha.

La agenda para esta asamblea extraordinaria del Consejo de Titulares incluía los siguientes temas:

"(1) Apertura de reunión

(2) Invocación

(3) Prueba de la convocatoria y de su notificación

(4) Verificación de *quórum*

(5) Lectura de Acta de la Asamblea Extraordinaria Anterior

(6) Auditoría Año 2006 y Seguro Comunal 2007-2008

(7) Informe de Status de las 3 Derrama[s] y [sic] Informe de Finanzas

(8) Renuncia del Presidente de la Junta de Directores

(9) Elección del nuevo Presidente

(10) Discusión del Reglamento conforme a la nueva Ley de Condominios

(11) Cierre de Asamblea"

Apéndice de la Recurrente, pág. 34.

El 22 de mayo de 2007 se celebró la asamblea extraordinaria convocada. Participaron 59 titulares, o el 20% del total de titulares del Condominio, además había 20 poderes para votar (*proxy*). Según consta del acta de la asamblea, esa noche se discutió el asunto número 7 de la agenda. Así, se informó sobre el estatus del proyecto de remodelación y modernización de los ascensores. Dicho proyecto y la correspondiente derrama fue aprobada por el Consejo de Titulares en una asamblea anterior. En el curso de esta discusión, se planteó si se debería imponer un sistema de llavines para poder utilizar los ascensores. Dichos llavines serían diferentes para cada piso, por lo que los titulares sólo tendrían acceso al piso en el cual ubica su propiedad.

El aludido asunto no formaba parte de la agenda que circuló la Junta junto con la convocatoria de la Asamblea. No obstante, la Junta llevó a cabo una votación acerca del establecimiento del sistema de llavines, y éste fue aprobado con 46 votos a favor y 11 votos en contra.

Para esa época, el Sr. Muñiz Cruz era el administrador del Condominio y había realizado gestiones para tramitar el proyecto de los llavines con anterioridad a la asamblea de mayo de 2007. Sin embargo, el Sr. Muñiz Cruz alega que durante la asamblea del Consejo de Titulares votó en contra del establecimiento del sistema de llavines. En el acta de la asamblea, no aparece desglosada la manera en que cada uno de los titulares ejerció su derecho al voto.

El 28 de abril de 2009, el Sr. Muñiz Cruz cursó una carta a la Junta en la que solicitó que desistieran del proyecto de los llavines. Alegó que el acuerdo para la instalación del sistema de llavines era una determinación *ultra vires* del Consejo de Titulares porque no contó con la aprobación unánime de los titulares, según lo establecen los Artículos 11 (a) (4), 12 y 13 de la Ley de Condominios, 31 L.P.R.A. secs. 1291i (a) (4), 1291k y

12911. Ante la inacción de la Junta, el 27 de junio de 2008, el Sr. Muñiz Cruz presentó la querella de epígrafe ante el DACO.

El 4 de agosto de 2008, la Junta contestó la querella. Negó todos los hechos alegados por el Sr. Muñiz Cruz. Además alegó que el querellante, aquí recurrido, no cumplió con los requisitos establecidos por el Artículo 42 de la Ley de Condominios, 31 L.P.R.A. sec. 1293, y levantó la defensa afirmativa de prescripción.

El 15 de enero de 2009, el DACO celebró una vista administrativa a la cual comparecieron las partes por medio de su representación legal. Testificaron por la parte querellante, aquí recurrida, la licenciada Nilda Castro, el licenciado Carlos Noriega y la Sra. Rochelle Mermelstein. Por la parte querellada, aquí recurrente, testificó el Sr. Campo.

Al inicio de la vista administrativa, la Junta presentó oralmente una moción de desestimación. Alegó que el término para presentar la querella caducó treinta días después de celebrada la asamblea extraordinaria de 22 de mayo de 2007 o el 21 de junio de 2007. El Juez Administrativo se reservó la adjudicación de la moción de desestimación y prosiguió con la vista.

En su resolución, el DACO dividió las controversias del caso en dos asuntos. El primero, determinar el tipo de impugnación solicitada por el Sr. Muñiz Cruz, y el segundo, determinar la legalidad de las actuaciones de la Junta durante la asamblea de 22 de mayo de 2007.

En cuanto al tipo de impugnación, el DACO concluyó que el Sr. Muñiz Cruz no sólo impugna un acuerdo que le es gravemente perjudicial, sino que alega que el acuerdo fue contrario a lo dispuesto por la Ley. En consecuencia, el DACO determinó que en la querella de epígrafe era de aplicación el término prescriptivo de dos años establecido por el Artículo 42 de al Ley de Condominios, 31 L.P.R.A. sec. 1293f (b).

En lo atinente al segundo asunto, el DACO concluyó que el asunto de los llavines no estaba contenido en la agenda de la convocatoria de la asamblea, según lo dispuesto por el Artículo 38-A de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-1. Razonó que al no incluir este asunto en la agenda, la Junta privó a los titulares de participar en la discusión de tan importante asunto que tenía como fin limitar el acceso de los titulares a otros pisos del Condominio distintos a aquél en que ubica su apartamento.

El DACO también concluyó que el sistema de llavines que se pretende instalar en el Condominio tiene el propósito de que cada titular tenga acceso exclusivo a su apartamento por el ascensor y limitar el uso del ascensor a los titulares a un sólo piso. Acorde con este sistema, un titular estaría impedido de acceder a los demás pisos y pasillos del Condominio. Siendo los ascensores un elemento común, es preciso que cualquier adjudicación sobre su uso esté dispuesto en la escritura de constitución del régimen de propiedad horizontal y luego de constituido éste, su conversión requiere el consentimiento unánime de los titulares. 31 L.P.R.A. secs. 1291i (b).

Al tenor de lo anterior, en resolución emitida el 3 de febrero de 2009, el DACO declaró nulo el acuerdo referente a los llavines logrado por una mayoría de los titulares del Condominio y ordenó a la Junta que celebrara una asamblea extraordinaria del Consejo de Titulares en un término de 45 días, contados a partir de la notificación de la resolución.

Inconforme con la resolución de DACO, la Junta presentó una moción de reconsideración el 23 de febrero de 2009. Esta moción fue rechazada de plano por la agencia.

El 9 de abril de 2009, la Junta acudió ante nos con la revisión administrativa de epígrafe. Hace los siguientes señalamientos de error:

**"PRIMER ERROR**

Erró el Departamento de Asuntos del Consumidor (DACO) al no desestimar la querella, cuando debió determinar que el derecho a presentar la acción de impugnación había caducado por el pasar del tiempo.

**SEGUNDO ERROR**

Erró el Departamento de Asuntos del Consumidor (DACO) al no desestimar la querella, ya que el recurrido no votó en contra ni se expresó en contra del acuerdo impugnado en la asamblea celebrada."

El 8 de junio de 2009, el Sr. Muñiz Cruz presentó su alegato de oposición por derecho propio. Alega que el DACO no cometió ninguno de los errores señalados por la Junta, porque el término prescriptivo de dos años provisto por el Artículo 42 (b), 31 L.P.R.A. sec. 1293f (b), era de aplicación en la querella de epígrafe por tratarse ésta de una impugnación de un acuerdo *ultra vires*, contrario a lo dispuesto por la Ley de Condominios.

Respecto al segundo error, el Sr. Muñiz Cruz arguye que votó en contra del acuerdo para implantar un sistema de llavines, y que durante la vista administrativa, el testimonio de la Sra. Mermelstein así lo demostró.

El 12 de junio de 2009, el Sr. Muñiz Cruz nos informó que la Junta no había cumplido con lo ordenado por el DACO mediante su resolución de 3 de febrero de 2009, a pesar de que el plazo de 45 días concedido por la agencia para celebrar la asamblea extraordinaria venció el pasado 20 de marzo de 2009. Plantea que en virtud de la Regla 61 (A) (1) del Reglamento de este Tribunal, 4. L.P.R.A. R. 61, debemos ordenarle a la Junta que cumpla con lo provisto en la resolución de DACO e imponerle sanciones.

Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A

Como cuestión de umbral, reafirmamos el principio de que a toda determinación administrativa le cobija una presunción de regularidad y corrección. Tal y como lo ha interpretado el Tribunal Supremo de Puerto Rico en numerosas ocasiones, la revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. *Otero v. Toyota,* 163 D.P.R. 716 (2005); *Pacheco v. Estancias de Yauco,* 160 D.P.R. 409 (2003); *E.L.A. et als. v. Malavé,* 157 D.P. R. 586 (2002); *Mun. de San Juan v. J.C.A.,* 149 D.P.R. 263 (1999); *Franco v. Depto de Educación,* 148 D.P.R. 703 (1999).

La presunción de corrección que acarrea una decisión administrativa, deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *E.L.A. v. P.M.C.,* 163 D.P.R. 478 (2004); *A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones,* 124 D.P.R. 858 (1989); *Henríquez v. Consejo de Educación Superior,* 120 D.P. R. 194 (1989); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692 (1975). Ello debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *Rivera Concepción v. A.R.P.E.,* 152 D.P.R. 116 (2000); *Fac. C. Soc. Aplicadas, Inc. v. C.E. S.,* 133 D.P.R. 521 (1993); *Asoc. Drs. Med. Cui. Salud v. Morales,* 132 D.P.R. 567 (1993).

Al evaluar a una petición para revisar judicialmente una determinación administrativa, el tribunal analizará sí de acuerdo con el expediente administrativo: (1) el remedio concedido fue razonable; (2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y (3) las conclusiones de derecho del organismo administrativo son correctas. *P.R.T. Co. v. J. Reg. Tel. de P.R.,* 151 D.P.R. 269 (2000); *Mun. de San Juan v. J.C.*

*A.*, 149 D.P.R. 263 (1999); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997). *Véase,* Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, pp. 533-536.

En lo atinente a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la sección 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175. Dicha sección, establece que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." *Véase, Rebollo v. Yiyi Motors,* 161 D.P.R. 69 (2004); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70 (2000); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387 (1999). El expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de ésta. *Comisionado v. Prime Life ,* 162 D.P.R. 334 (2004); *Torres v. Junta Ingenieros,* 161 D.P.R. 696 (2004).

El concepto de evidencia sustancial ha sido definido por la jurisprudencia como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Ramírez Rivera v. Depto. de Salud,* 147 D.P.R. 901 (1999); *Misión Ind. P.R. v. J. P.,* 146 D.P.R. 64 (1998); *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670 (1953). Ello no requiere que a la luz de la prueba que obre en autos la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Pero tampoco se considerará como correcta una determinación sostenida por un mero destello de evidencia. *Id.* El criterio rector en estos casos, será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad. *Id.; Otero v. Toyota, supra; Fuertes v. A.R.P.E.,* 134 D.P.R. 947 (1993). Por ende, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa, tiene el peso de la prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que se llegó son irrazonables. *Ramírez Rivera v. Depto. de Salud, supra; Misión Ind. P.R. v. J.P., supra.*

Conforme a lo dispuesto por ley, existe una práctica judicial claramente establecida de conceder gran consideración y deferencia a las decisiones de los foros administrativos. *Otero v. Toyota, supra; Rebollo v. Yiyi Motors, supra; Misión Ind. P.R. v. J.C.A.,* 145 D.P.R. 908 (1998). Dicha deferencia emana del reconocimiento de que, de ordinario, las agencias administrativas están en mejor posición para hacer determinaciones de hechos al tratar con una materia sobre la cual tienen un conocimiento especializado. *Id; Véase, Metropolitana S.E. v. A.R.P. E.,* 138 D.P.R. 200 (1995); *Gallardo v. Clavell,* 131 D.P.R. 275 (1992). Más aún, cuando una determinación de una agencia esté sustentada por evidencia sustancial que obre en el expediente del caso, los tribunales deben abstenerse de sustituir el criterio de la agencia por el judicial. *Otero v. Toyota, supra; Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85 (1997).

No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias no significa una abdicación de la función revisora del foro judicial. *Rivera Concepción v. A.R.P.E., supra; Del Rey v. J.A.C.L.,* 107 D.P.R. 348 (1978). Por el contrario, los tribunales tienen el deber de proteger a los ciudadanos contra posibles actuaciones *ultra vires*, inconstitucionales o arbitrarias de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable o ante la ausencia de prueba adecuada o cuando la agencia cometió error manifiesto en la apreciación de la misma. *Comisionado v. Prime Life., supra; Torres v. Junta Ingenieros, supra; O.E.G. v. Rodríguez,* 159 D.P.R. 98 (2003).

Por otro lado, el Tribunal Supremo ha expresado que "los tribunales tenemos el deber de fiscalizar rigurosamente las decisiones de dichas agencias, para asegurar que desempeñen cabalmente sus importantísimas funciones, y para que el País no pierda la fe en sus instituciones de gobierno." *Mun. de San Juan v. J.C.A.,* 152 D.P.R. 673, 700 (2000).

Así, la revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los

organismos administrativos para asegurar que éstos ejerzan sus funciones conforme la ley y de forma razonable. *Mun. de San Juan v. J.C.A.,* 149 D.P.R. 263, 279 (1999).

Ahora bien, según lo dispone la mencionada Sección 4.5 de la L.P.A.U., "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal." El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones legales por lo cual no se adelanta ningún fin público dándole deferencia a la agencia en cuanto a este aspecto. *San Antonio Maritime v. P.R. Cement Co.,* 153 D.P.R. 374 (2001); *Miranda v. C.E.E.,* 141 D.P.R. 775 (1996).

Sin embargo, lo anterior no quiere decir que los tribunales deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. La jurisprudencia interpretativa del Tribunal Supremo tiende a señalar que los tribunales deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran. Ello, debido a que por tratarse de áreas del derecho que manejan a diario, las agencias desarrollan un conocimiento especializado al respecto que no debe ser menospreciado. *Asoc. Vec. H. San Jorge v. U. Med. Corp. , supra; Rivera Rentas v. A & C Development,* 144 D. P.R. 450 (1997).

El criterio de revisión en cuanto a las interpretaciones legales hechas sobre los estatutos que maneja la agencia debe ser también uno de razonabilidad. Aún así, la deferencia que merecen estas interpretaciones legales, cede ante una actuación irrazonable o ilegal que justifique que el tribunal ejerza su función revisora en protección de la ciudadanía. *Pacheco v. Estancias de Yauco, supra. Véase, Adorno Quiles v. Hernández,* 126 D.P.R. 191 (1990).

No obstante, en cuanto a las conclusiones de derecho que no envuelven interpretaciones de las leyes y reglamentos que administra la agencia cuya decisión es impugnada ni dentro del área de especialidad de ésta, las mismas son revisables por los tribunales sin limitaciones. *Misión Ind. P.R. v. J.P., supra; Rivera Rentas v. A & C Development, supra.*

**B**

La Ley de Condominios, Ley Núm. 103 del 5 de abril de 2003, según enmendada, 31 L.P.R.A. secs. 1291 *et seq.,* establece un esquema para el manejo y la administración de los edificios organizados a su amparo en el cual el Consejo de Titulares es "la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal" y le otorga a éste personalidad jurídica. 31 L.P.R.A. sec. 1293(b). La nueva de Ley de Condominios, *supra,* reafirmó en su Exposición de Motivos los principios básicos del régimen de propiedad horizontal y mantuvo las características fundamentales de éste. Entre éstos se encuentran el disfrute del apartamento como núcleo del régimen, el principio de que sea el Consejo de Titulares el organismo en el que resida el control último sobre las decisiones relacionadas con la administración del inmueble, el reconocimiento de la personalidad jurídica del referido Consejo, y la disponibilidad de un foro especializado para atender con agilidad los conflictos que puedan surgir entre los integrantes del régimen. La Exposición de Motivos de la nueva ley nos revela que el legislador pretendió "mejorar y fortalecer aún más el régimen existente, como sistema revestido de interés público por la función social que desempeña en nuestro desarrollo urbano." Exposición de Motivos, Ley Núm. 103, *supra.*

Como bien señalara nuestro más Alto Foro en el caso de *Junta Dir. Cond. Montebello v. Torres,* 138 D.P.R. 150, 154 (1995), el principio rector del régimen de propiedad horizontal gira en torno a la sana convivencia entre condóminos, siendo imperativo crear un balance entre el disfrute del apartamento como unidad central del régimen y la intervención indebida con los derechos individuales, la paz y tranquilidad de los demás. *Véase además, Álvarez Figueredo v. González Lamela,* 138 D.P.R. 958 (1995). Por ello, se ha reconocido "que el uso exclusivo de cada apartamento por su titular, también impone unas limitaciones al disfrute de cada uno en interés de la colectividad". *Id.*

Según el esquema adoptado por la Ley de Condominios, la incorporación de un edificio al régimen de propiedad horizontal se produce mediante el otorgamiento e inscripción en el Registro de la Propiedad de una escritura matriz que describe los apartamentos individuales y elementos comunes del edificio, así como lo relativo a su administración, cuando ello se entienda necesario. 31 L.P.R.A. sec. 1292; *Véase, Asoc. Cond. Balcones S.Ma. v. Los Frailes,* 154 D.P.R. 800, 809 (2001); *Brown III v. J.D. Cond. Playa Grande,* 154 D.P.R. 225, 233 (2001).

Igualmente, los condóminos deben aprobar un reglamento para gobernar la administración del inmueble. Este reglamento también debe ser inscrito en el registro. 31 L.P.R.A. sec. 1293(a). Así, la escritura y el reglamento constituyen un estatuto privado que gobierna los condóminos y a cuyas disposiciones debe acudirse para dirimir cualquier conflicto entre ellos. *Brown III v. J.D. Cond. Playa Grande, supra; Consejo de Titulares v. Vargas,* 101 D.P.R. 579, 582 (1973).

Por otro lado, la Ley de Condominios requiere que la convocatoria a una asamblea indique, entre otras cosas, los asuntos a tratar, la hora, el día y el lugar de la reunión. Cuando la convocatoria de una asamblea no cumple con los requisitos antes mencionados, cualquier titular puede impugnar los acuerdos que en ella se tomen y cuya aprobación no pueda preverse de la misma. Michel J. Godreau, *El Condominio,* 1era ed., San Juan, Dictum 1992, pág. 114.

Respecto a los acuerdos que requieran unanimidad que se adopten por los titulares en una asamblea, el Artículo 38-C (e) de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-3(e), dispone que los que no asistieron, pero fueron debidamente citados, serán notificados fehaciente y detalladamente del acuerdo adoptado. Si en un plazo de treinta (30) días, a contar desde la notificación, éstos no manifiestan su oposición, quedarán vinculados por el acuerdo.

De otra parte, se ha dicho que los acuerdos que requieran unanimidad deben ser tratados con suma cautela y deben cumplirse todos los requisitos establecidos en la Ley de Propiedad Horizontal. Por tal motivo, ".... el cumplimiento de los requisitos de convocatoria, de *quórum* y de notificación fehaciente son de carácter esencial para la validez de los acuerdos que requieren unanimidad. Como secuela de ello, la aprobación por unanimidad de estos acuerdos no puede presumirse. La parte que los invoca deberá probar la existencia y corrección de la convocatoria, la asistencia y votación unánime de los titulares que concurrieron a la asamblea, así como la prueba de las notificaciones cursadas a aquellos titulares que no comparecieron, junto a algún tipo de certificación de que no hubo oposición luego de transcurrido el plazo de 30 días dispuesto en la Ley." Godreau, *Op. Cit.*, pág. 120.

La Ley de Condominios, 31 L.P.R.A. sec. 1293f, dispone que los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones de los funcionarios u organismos rectores del condominio pueden ser impugnados por: (1) ser gravemente perjudiciales al titular querellante o a la comunidad de titulares, y (2) ser contrarios a la ley, la escritura de constitución o al reglamento del condominio. Con ese propósito, el Artículo 42 de la Ley de Condominios estableció el siguiente procedimiento para impugnar las determinaciones de la Junta de Directores:

"(2) Todo titular que presente una querella ante cualquier tribunal o foro pertinente impugnando cualquier acción u omisión de la Junta de Directores, deberá demostrar que agotó el siguiente procedimiento:

(A) Haber solicitado por escrito la dilucidación de su reclamo ante la Junta de Directores y que ésta no atendió sus planteamientos en un plazo de treinta (30) días desde el acuse de recibo de la reclamación. Esta reclamación deberá presentarse ante la Junta dentro de los treinta (30) días siguientes a la fecha en que se tomó el acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación. Si se tratare de una actuación u omisión perjudicial, el plazo para presentar la reclamación, será dentro de los treinta (30) días siguientes a la fecha en que el titular tenga conocimiento de tal actuación u omisión

perjudicial.

(B) La Junta podrá resolver el asunto o someterlo *motu proprio* al Comité de Conciliación, salvo que el titular haya requerido que su reclamación pase directamente a la consideración de dicho Comité. El Comité deberá resolver el asunto en el término de treinta (30) días desde que le fuera referida la reclamación del titular y en todo caso dentro de un término máximo de sesenta (60) días desde que el titular presentara su reclamo ante la Junta.

(C) Al presentar su querella, el titular deberá certificar que su reclamación no fue atendida dentro de los términos anteriormente provistos o que la solución propuesta por la Junta o por el Comité de Conciliación le es gravemente perjudicial.

[...]

(c) La acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Consejo de Titulares, con excepción de los realizados por el titular que somete el inmueble al régimen, que violen las disposiciones de este capítulo, de la escritura matriz o del Reglamento del condominio, prescribirá a los dos (2) años de haberse notificado el acuerdo, tomado la acción o de conocerse la omisión. Para los titulares que impugnen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente.

Al ejercitar la acción de impugnación de acuerdos del Consejo de Titulares, el titular deberá acreditar que estuvo presente o representado en la reunión en que se tomó el acuerdo que impugna y que no votó a favor del mismo. Si estuvo ausente, a pesar de que fue debidamente notificado, deberá probar que su ausencia estuvo justificada."

31 L.P.R.A. sec. 1293 f

El término de 30 días que establece la Ley de Condominios aplica exclusivamente a las acciones de impugnación de acuerdos, en las que el titular alegue que son gravemente perjudiciales para él o para la comunidad de titulares. Las acciones basadas en actos del Consejo de Titulares que sean contrarios a la ley, a la escritura matriz o a al reglamento de un condominio, no están sujetas a ese plazo. *Srio. D.A.C.O. v. J. Condóminos C. Martí,* 121 D.P.R. 807, 819 (1988).

Por otra parte, el Artículo 11 de la Ley de Condominios enumera lo que se consideran elementos comunes generales del inmueble sometido a ese régimen. Entre esos elementos están los techos, las galerías, los vestíbulos, las escaleras, las vías de entrada y salida o de comunicación. Específicamente, el inciso (a) (4) dispone:

"(4) Los ascensores, cuando éstos sean necesarios para el adecuado disfrute de los apartamientos.

[...]

Cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo."

31 L.P.R.A. sec. 1291(i)

El ascensor de un edificio sometido al régimen de propiedad horizontal es un elemento común general necesario sobre el cual cada condómino tiene un derecho de copropiedad. *Arce v. Caribbean Home Const. Corp.,* 108 D.P.R. 225 (1978). Un elemento común general de un edificio sometido al régimen de propiedad horizontal de acuerdo con las disposiciones de la Ley de Condominios, puede ser cambiado a elemento común limitado, sólo

cuando todos los condóminos aprueban tal cambio. *Id.*

El Tribunal Supremo de Puerto Rico ha reconocido que los elementos del condominio son o no comunes, de acuerdo con lo pactado en la escritura matriz, según lo dispone la Ley de Condominios. *Véase, Pellón v. O'Clare,* 98 D.P.R. 692, 698 (1970). La enumeración de elementos comunes contenida en la Ley de Condominios goza de una naturaleza de *numerus apertus.* Así, la escritura matriz puede incluir elementos comunes adicionales o más amplios. *Brown III v. J.D. Cond. Playa Grande, supra.*

El Artículo 12 de la Ley de Condominios señala que:

"También serán considerados elementos comunes, pero con carácter limitado, **siempre que así se acuerde expresamente por la totalidad de los titulares del inmueble**, aquellos que se destinen al servicio de cierto número de apartamientos con exclusión de los demás, tales como pasillos, escaleras y ascensores especiales, servicios sanitarios comunes a los apartamientos de un mismo piso y otros análogos." [Destacado nuestro]

31 L.P.R.A. sec. 1291j

Por último, el Artículo 13 dispone, en lo pertinente, que "[l]os elementos comunes, generales y limitados, se mantendrán en indivisión forzosa y no podrán ser objeto de la acción de división de la comunidad. Cualquier pacto en contrario será nulo." 31 L.P.R.A. sec. 1291k.

### III

La Junta alega que el DACO erró al no desestimar la querella de epígrafe porque el término de prescripción que debe aplicarse es de treinta días según dispone el Artículo 42 de la Ley de Condominios, *supra.* Plantea que permitir que el Sr. Muñiz Cruz presente una impugnación luego de que ha transcurrido más de un año, va en contra de los objetivos de la Ley de Condominios. Alega que la impugnación del Sr. Muñiz es un abuso de su derecho como titular. Arguye que el DACO erró al autorizar este tipo de actuación caprichosa, en desdén de los más sanos principios de la buena vecindad y que ha sido motivada por venganza en contra del Consejo, con posterioridad a que el recurrido cesara sus funciones como administrador del Condominio. No le asiste la razón.

El Artículo 42 es claro al establecer el término prescriptivo de dos años para impugnar actuaciones del Consejo de Titulares que estén en contra de las disposiciones de la referida Ley. Sabido es que "cuando la ley es clara, libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu". Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14.

Luego de analizar cuidadosamente el expediente administrativo del caso de epígrafe, somos del criterio de que el acuerdo alcanzado en la asamblea extraordinaria del Condominio fue contrario a la ley. El Juez Administrativo del DACO correctamente concluyó que la Junta violó las disposiciones de la Ley de Condominios porque no incluyó en la agenda de la asamblea como asunto a discutirse la implantación del sistema de llavines en el Condominio. Al respecto expresó el Juez Administrativo:

"Al no haberse expresado este asunto en la agenda de la convocatoria, los miembros del Consejo de Titulares no tenían forma de enterarse de la discusión de tan importante asunto y decidir si participaban o no en la toma de decisión. El no haber incluido este asunto en la agenda, constituye una clara violación al Artículo 38-A antes citado y automáticamente anula cualquier acuerdo sobre el particular."

Apéndice de la Recurrente, pág. 23.

Además, determinó que el acuerdo fue logrado sólo por una mayoría cuando la Ley de Condominios expresamente dispone que estos acuerdos deben contar con la aprobación unánime de los condóminos. Concluyó

que la propuesta del sistema de llavines en el ascensor del Condominio constituye un intento de privatizar los pasillos de cada piso y un acuerdo para realizar este tipo de cambio requiere un voto unánime del Consejo de Titulares y no una votación de mayoría simple. Es preciso destacar que la mayoría que votó a favor de implantar el sistema de llavines en el Condominio en la asamblea de 22 de mayo de 2007 sólo representa el 15% de la totalidad del Consejo de Titulares. No se cometió el primer error.

Como segundo error, la Junta alega que el DACO incidió al no desestimar la querella de epígrafe porque el Sr. Muñiz Cruz no votó en contra del sistema de llavines en la asamblea de 22 de mayo de 2007. Alega sucintamente que "ha insistido en que el recurrido votó a favor del proyecto de los llavines, hecho que no fue reconocido por el DACO, esto a pesar de la prueba testifical presentada en la vista administrativa." Arguye, además, que el Sr. Muñiz Cruz fue artífice del sistema de llavines y que realizó las gestiones necesarias y conducentes para su aprobación. No obstante, la recurrente no ofrece detalle alguno acerca de la prueba testifical que alegadamente demostró que el recurrido votó a favor del sistema de llavines. Según demuestra la resolución recurrida, el DACO sí tomó en cuenta las alegaciones de la Junta y entre las determinaciones de hechos puntualizó que el Sr. Muñiz Cruz "indicó haber votado en contra de lo propuesto en relación a las llaves" y concluyó que las actas de la asamblea de 22 de mayo de 2007 no reflejan qué titulares votaron a favor y cuáles votaron en contra.

Por último, la Junta alega que la determinación del DACO no se ajusta a la evidencia presentada en el caso. Sin embargo, no nos explica cuál es la evidencia que obra en el expediente que el DACO no consideró o no le dio peso al emitir su determinación. Es norma reiterada que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Somos del criterio que la recurrente no nos ha puesto en posición de resolver que la resolución emitida por el DACO fue irrazonable o arbitraria. Asimismo, falló en rebatir la presunción de corrección y la deferencia que cobija a toda decisión administrativa. Por tal razón, concluimos que existe evidencia sustancial en el récord administrativo que sostiene la determinación del DACO.

Al tenor del análisis que antecede, procede confirmar la resolución recurrida.

Finalmente, con relación a la moción de 12 de junio de 2009 presentada por el Sr. Muñiz Cruz, carecemos de jurisdicción para atender su reclamo. Cualquier planteamiento sobre la ejecución de la resolución de 3 de febrero de 2009 deberá hacerla ante el Departamento de Asuntos del Consumidor.

## IV

Por los fundamentos expuestos, confirmamos la resolución emitida y notificada el 3 de febrero de 2009 por el Departamento de Asuntos del Consumidor.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones