ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CONSEJO DE TITULARES DEL CONDOMINIO LAS VISTAS DE GURABO<br><br>APELANTE<br><br>V.<br><br>LIME RESIDENTIAL LTD; SELECT PORTFOLIO SERVICING, INC., DLJ MORTGAGE CAPITAL, INC.<br><br>APELADOS | TA2025AP00026 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Superior de Caguas<br><br>Caso Número: CG2020CV01579<br><br>Sobre: Cobro de dinero; Ley de Condominios; Enriquecimiento Injusto; Abuso de Derecho |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 29 de agosto de 2025.

Comparece el Consejo de Titulares del Condominio Las Vistas de Gurabo (en adelante la parte apelante), mediante un recurso de apelación y nos solicita que revoquemos la Sentencia emitida el 7 de mayo de 2025 por el Tribunal de Primera Instancia, Sala de Caguas (en adelante el TPI).

**I.**

El 6 de agosto de 2020, el Consejo de Titulares del Condominio Las Vistas de Gurabo, presentó una *Demanda*[1] contra Lime Residential LTD y Select Portfolio Servicing, Inc. (SPS) (en adelante la parte apelada), en la que reclamaron el pago de una deuda por concepto de cuotas de mantenimiento, seguro comunal, derrama, intereses y penalidades dejadas de pagar correspondientes al Apartamento 431. Arguyó que el Apartamento 431 consta inscrito en el Registro de la Propiedad a nombre de José Rivera Alvarado y

---

[1] Entrada #1 de SUMAC del TPI.

Número identificador

SEN2025_____

su esposa, Ellindabeth Milagros Ríos Alvarado, (en adelante Rivera Alvarado y Ríos Alvarado) quienes compraron la unidad para el año 2006. Indicó que dicho apartamento aparece gravado por una Hipoteca a favor de Banco Popular. Expuso que el Banco Popular presentó una acción de cobro de dinero y ejecución de hipoteca en el caso civil ECD2009-1197. Como parte de dicho procedimiento, se anotó en el Registro de la Propiedad un aviso de prohibición de enajenar y embargo. Manifestó que los esposos Rivera Alvarado y Ríos Alvarado presentaron una petición de Quiebra, caso 11-00425-SEK7, por lo cual quedó suspendida la venta en publica subasta del Apartamento 431. Alegó que los esposos Rivera Alvarado y Ríos Alvarado en mayo del 2011, presentaron un *Notice of Abandoment of Property*, que incluyó el referido apartamento y que el 13 de mayo de 2022, el Tribunal de Quiebra emitió una Orden titulada *Order Discharging Trustee and Closing the case* en el cual concluyó que el *"Estate has been fully administered"*. Sostuvo que, en enero de 2013, el Tribunal en el caso civil ECD2009-1197 emitió una Orden autorizando la ejecución y celebración de la venta del inmueble. No obstante, no surge que se haya celebrado la venta en pública subasta del inmueble. Indicó que el actual tenedor del pagaré hipotecario es la Lime Residential y que en comunicaciones de SPS enviadas al Consejo de Titulares, se denominó titular del inmueble en controversia. En su consecuencia, planteó que esta entidad era responsable de la deuda por concepto de cuotas de mantenimiento, derrama, seguro comunal, intereses y penalidades.

El 21 de octubre de 2020 la parte apelada presentó una *Moción de Desestimación[2]*. En dicho escrito, expresó que las alegaciones presentadas por la parte apelante son insuficientes para sustentar la causa de acción de cobro de dinero. Alegó, además, que

---

[2] Entrada #10 de SUMAC del TPI.

el proceso de ejecución de sentencia en el caso ECD2009-1197 no había culminado y que la titularidad del Apartamento 431 no había sido transferida a estos.

La parte apelante presentó la *Oposición a Moción de Desestimación*[3] el 23 de noviembre de 2020. Adujo, que la parte apelada, Lime Residential LTD, era el responsable de las cuotas adeudadas. En respuesta a este escrito, el 5 de enero de 2021, la parte apelada radicó su *Réplica a Oposición a Moción de Desestimación*[4] y posteriormente el 7 de enero de 2021 la parte apelante radicó una *Dúplica a Réplica sobre Moción de Desestimación de Lime Y SPS*[5].

Evaluados los escritos, el Tribunal de Primera Instancia (TPI) declaró no ha lugar la solicitud de desestimación, mediante *Resolución* emitida el 14 de abril de 2021 y notificada el 15 de abril de 2021. En su determinación el foro primario concluyó que, en esa etapa del procedimiento, no podía determinar con certeza quien era el titular el apartamento en controversia y que las partes aún no habían iniciado el descubrimiento de prueba.

Luego de varios trámites procesales, el 3 de diciembre de 2021 la parte apelante presentó una *Demanda Enmendada*[6] a los efectos de traer como parte a DLJ Mortgage Capital Inc. (DLJ). En la demanda enmendada, la parte apelante arguyó que Banco Popular le transfirió sus intereses propietarios a DLJ en el caso sobre Ejecución de Hipoteca, caso civil ECD2009-1197. Alegó que la codemandada SPS es agente, apoderada y representante autorizado de DLJ en relación con el Apartamento 431. Expuso que en comunicaciones de SPS al Consejo de Titulares, SPS como agente de DLJ indicó ser el titular del referido apartamento. Manifestó que,

---

[3] Entrada #12 de SUMAC del TPI.
[4] Entrada #14 de SUMAC del TPI.
[5] Entrada #15 de SUMAC del TPI.
[6] Entrada #93 de SUMAC del TPI.

para octubre de 2018, la codemandada DLJ le transfirió a Lime sus intereses propietarios sobre el Apartamento 431 en el caso de Ejecución de Hipoteca, caso civil ECD2009-1197. Señaló que, para el 1 de diciembre de 2021, el titular del Apartamento 431 le adeudaba al Consejo de Titulares la suma de $61,354.80 por concepto de mantenimiento, seguro comunal, derrama, intereses y penalidades. Estos alegaron que el hecho de que el Apartamento 431 aún aparezca inscrito en el Registro de la Propiedad a nombre del señor Ríos Alvarado y su esposa, Rivera Alvarado es irrelevante y que existe discrepancia entre la realidad registral y extraregistral. Expuso que los demandados son los titulares actuales del apartamento antes indicado por lo que responden por los pagos de cuotas de mantenimiento y que en el supuesto de que no lo sean, responderían bajo la doctrina de enriquecimiento injusto.

El 11 de febrero de 2022 la parte apelada presentó *Moción de Sentencia Sumaria*[7].   Expresó que procedía la desestimación sumaria de la acción del caso en base a los hechos controvertidos y la evidencia sometida.  Adujo, además, que como cuestión de hecho estos no habían recibido, por la vía judicial o extrajudicial, la transferencia del título de la propiedad del Apartamento 431, por lo que no eran los titulares del inmueble, ni responsables del pago de las cuotas de mantenimientos reclamadas.

A su vez, la parte apelante presentó su *Oposición a Moción de Sentencia Sumaria*[8] el 16 de diciembre de 2022. Argumentó controversias de hechos y solicitó descubrimiento de prueba adicional.  Asimismo, el 9 de enero de 2023, la parte apelada radicó su *Réplica a Oposición a Moción de Sentencia Sumaria*[9] y el 27 de

---

[7] Entrada #112 de SUMAC del TPI.
[8] Entrada #136 de SUMAC del TPI.
[9] Entrada #139 de SUMAC del TPI.

enero de 2023 la parte apelante la *Dúplica a Réplica sobre Oposición a Moción de Sentencia Sumaria.*[10]

Finalmente, el 7 de mayo de 2025, notificada el 13 de mayo de 2025, el TPI dictó Sentencia declarando con lugar la solicitud de sentencia sumaria presentada por la parte apelada y desestimó la acción de epígrafe.

La parte apelante presentó el 27 de mayo de 2025 una *Moción en Solicitud de Determinaciones Adicionales de Hechos y en Solicitud de Reconsideración[11],* la cual fue declarada No Ha Lugar por el TPI mediante orden emitida el 28 de mayo de 2025 y notificada el 30 de mayo de 2025.

Inconforme, la parte apelante presentó el recurso ante nos y plantea:

> **ERRÓ EL TPI AL DESESTIMAR LA SEGUNDA CAUSA DE ACCIÓN.**
>
> **ERRÓ EL TPI AL DESCARTAR LAS ADMISIONES Y PROMESAS DE PAGO DE LAS DEMANDADAS BAJO LA PREMISA DE QUE DICHAS EXPRESIONES ESCRITAS FUERON UN MERO ERROR DE ÉSTAS, Y EN VIRTUD DE ELLO DESESTIMAR SUMARIAMENTE LA PRIMERA CAUSA DE ACCIÓN.**
>
> **ERRÓ EL TPI AL DESESTIMAR SUMARIAMENTE LA PRIMERA CAUSA DE ACCIÓN POR EL HECHO DE NO HABER EVIDENCIA DE TRANSFERENCIA DE TÍTULO, YA QUE LAS ADMISIONES Y MANIFESTACIONES DE VOLUNTAD DE LAS DEMANDADAS SON CONSTITUTIVAS DE RESPONSABILIDAD CIVIL.**
>
> **ERRÓ EL TPI AL DESESTIMAR SUMARIAMENTE LA DEMANDA ENMENDADA SIN COMPLETARSE EL DESCUBRIMIENTO DE PRUEBA.**

A su vez, la parte apelada presentó su *Oposición a Apelación*. Allí, aduce que el TPI resolvió conforme a derecho, al concluir que ninguna de las partes apeladas era titular del Apartamento 431 por no haberse dado una transferencia de titularidad y que carecían de

---

[10] Entrada #142 de SUMAC del TPI.
[11] Entrada #157 de SUMAC del TPI.

responsabilidad legal por el pago de las cuotas de mantenimiento adeudadas relacionadas a dicho apartamento.

Con el beneficio de la comparecencia de las partes, el Derecho y jurisprudencia aplicables, resolvemos.

## II.

## A. Moción de sentencia sumaria

La sentencia sumaria es un mecanismo procesal provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, cuyo fin es proveer una solución justa, rápida y económica de los litigios. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Así pues, dicho mecanismo procesal permite que un tribunal disponga, parcial o totalmente, de litigios civiles en aquellos casos en los que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020). La sentencia sumaria procede cuando "no existen controversias *reales* y *sustanciales* en cuanto a *los hechos materiales*, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho". *Meléndez González et al. v. M. Cuebas, supra*, pág. 109 (citando a *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26-27 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010)).

Al interpretar la precitada Regla el Tribunal Supremo ha expresado que debe dictarse sentencia sumariamente cuando el tribunal sentenciador tiene ante sí, de manera incontrovertible, la verdad sobre todos los hechos esenciales. *E.L.A. v. Cole*, 164 DPR 608, 625 (2005). De manera que, "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria [...] cuando causa en el tribunal una duda real y sustancial sobre algún

hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se entiende que un hecho material es aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Por lo que, no deberá dictar sentencia sumaria cuando: 1) existen hechos materiales controvertidos; 2) hay alegaciones afirmativas en la demanda que no han sido refutadas; 3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o 4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra, supra,* pág. 757; *S.L.G. Szendrey-Ramos v. Consejo Titulares,* 184 DPR 133, 167 (2011).

Al atender la moción de sentencia sumaria, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole, supra,* pág. 626. No obstante, "la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática". *Mun. de Añasco v. ASES,* 188 DPR 307, 327 (2013) (citando a Córdova *Dexter v. Sucn. Ferraiuoli,* 182 DPR 541, 556 (2011)). En ese sentido, corresponde al juzgador actuar guiado por la prudencia y ser consciente de que su determinación podría implicar que se prive a una de las partes de su "día en corte", elemento esencial del debido proceso de ley. *León Torres v. Rivera Lebrón, supra,* pág. 44. Cónsono con lo anterior, nuestro más alto foro ha resuelto que, existen litigios y controversias que "por su naturaleza no resulta aconsejable resolverlos mediante una sentencia dictada sumariamente; ello, en vista de que en tales casos un tribunal difícilmente podrá reunir ante sí toda la verdad de los hechos a través de affidávits, deposiciones o declaraciones juradas". *Jusino et als. v. Walgreens,*

155 DPR 560, 579 (2001) (citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 311 (1994); *García López v. Méndez García*, 88 DPR 363, 379 (1963). Dicho foro ha identificado como posibles controversias de este tipo aquellas que incluyen: "elementos subjetivos, es decir, aquellas en las que el factor credibilidad juegue un papel esencial o decisivo para llegar a la verdad, y donde un litigante dependa 'en gran parte de lo que extraiga del contrario en el curso de un juicio vivo'. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997).

En lo pertinente, la Regla 36 de Procedimiento Civil, *supra*, impone unos requisitos de forma con los cuales hay que cumplir al momento de promover una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Si la parte promovente incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 111.

Asimismo, la parte que se opone a una sentencia sumaria tiene que cumplir con los requisitos de la precitada Regla 36, *supra*. *Oriental Bank v. Caballero García*, *supra*, pág. 680. En otras palabras, la parte que desafía dicha solicitud no podrá descansar en

las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón, supra,* pág. 43. Así pues, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe "puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra". *Id.*, pág. 44. Entiéndase que, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *Id.* De lo contrario, corre el riesgo de que se dicte sentencia en su contra. *Oriental Bank v. Caballero García, supra,* pág. 680.

### B. Revisión del foro apelativo sobre una sentencia sumaria emitida por el foro inferior

Al evaluar una moción de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición del Tribunal de Primera Instancia. *Serrano Picón v. Multinational Life Ins., supra,* pág. 993; *Meléndez González et al. v. M. Cuebas, supra,* pág. 118. Tómese en cuenta que, nuestra revisión es una *de novo* y debemos basar nuestro análisis por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* así como de su jurisprudencia interpretativa. A tenor, nuestro más alto foro ha esbozado los criterios que deben guiar esta revisión. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas, supra,* págs. 118-119. Por ello, el Tribunal de Apelaciones debe:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra;*

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos y;

4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al., supra*, pág. 679.

Ahora bien, estamos limitados en cuanto a: (1) que no podemos tomar en consideración evidencia que las partes no presentaron ante el foro primario, y (2) tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al tribunal de instancia luego de celebrado un juicio en su fondo. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Al realizar nuestra revisión *de novo* debemos "examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Id.*

### C. Cuotas de mantenimiento

La Ley Núm. 129 del 16 de agosto de 2020, conocida como Ley de Condominios de Puerto Rico (Ley Núm. 129-2020), entró en vigor de manera inmediata y rige todos los inmuebles sometidos al régimen de Propiedad Horizontal independientemente de la fecha de constitución del régimen. 31 LPRA sec. 1921nt. El propósito de la Ley de Condominios es establecer un régimen jurídico que facilite la vida en convivencia y propicie la disponibilidad de viviendas en un área restringida de terreno. Exposición de Motivos de la Ley Núm. 129-2020. De esta forma, la ley establece los mecanismos legales para asegurar que los inmuebles sometidos al régimen de propiedad horizontal puedan ser administrados de forma ordenada, asegurando la conservación de la propiedad compartida, evitando

conflictos comunales y salvaguardando la funcionalidad del régimen.

El pago de cuotas de mantenimiento es uno de esos mecanismos que constituye un elemento fundamental para el sostenimiento de la vida en comunidad y para lograr el disfrute pleno y la coexistencia. *Condominio First Federal Savings v. LSREF2 Island Holdings*, 202 DPR 934, 940 (2019). Las cuotas de mantenimiento constituyen una obligación para los titulares de los apartamentos quienes, con su aportación proporcional, contribuyen al bienestar del condominio y a la sana convivencia dentro del régimen. *Maldonado v. Consejo de Titulares*, 111 DPR 427, 430 (1981). Tanto es así, que la ley establece que [n]ingún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca. 31 LPRA sec. 1923d.

La relevancia de esta obligación es tal, que la propia Ley de Condominios establece mecanismos sumarios para agilizar el cobro de las cuotas adeudadas. *Consejo de Titulares del Condominio Centro Internacional de Mercadeo Torre II v. PRCI LOAN CR, LLC*, 210 DPR 403, 415 (2022), citando a M.J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 2.a ed., San Juan, Ed. Situm, 2019, pág. 299. En ese sentido, se permite el cobro de intereses, cargos y multas, suspensión de servicios básicos y hasta negar el derecho a votar en las asambleas. 31 LPRA secs. 1922w y 1923d; *Ayala Hernández v. Consejo de Titulares*, 190 DPR 547, 576 (2014). Asimismo, la ley autoriza para que la deuda de un titular por concepto de cuotas de mantenimiento para gastos comunes se le pueda reclamar judicialmente, ello luego de ser requerido el pago mediante correo certificado con acuse de recibo y de este no cumplir el pago en el plazo de vencimiento. *Id.*, sec. 1923d. A tenor con lo anterior, la ley contempla que:

> Cuando se reclame la deuda por la vía judicial, el tribunal, a instancias del demandante, evaluará y determinará si a su juicio procede decretar el embargo preventivo de las bienes del deudor o deudores, libre de fianza, y sin otro requisito que la presentación de una certificación jurada por el Presidente o el Tesorero, ante un notario público u otro funcionario autorizado para tomar juramentos, en que conste el acuerdo que aprobó el gasto exigible y su cuantía, así como la gestión de requerimiento de pago... Una vez decretado el embargo será responsabilidad de la Junta de Directores presentar al Registro de la Propiedad una copia certificada de la orden para su anotación en la finca pertinente. *Id.*

La obligación del titular de un apartamento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamento. 31 LPRA sec. 1923e. Esta obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna. *Id.* Nuestro Tribunal Supremo ha reconocido que el factor fundamental al momento de determinar quién es responsable por el pago de las cuotas de mantenimiento es la **titularidad**. *Asoc. Cond. Balcones S.Ma. v. Los Frailes*, 154 DPR 800, 818 (2001). (Énfasis nuestro). En ese sentido, el Supremo explicó que la Ley de Propiedad Horizontal, hoy Ley de Condominios, no condiciona la responsabilidad por el pago de cuotas de mantenimiento a ningún otro criterio o circunstancia que no sea el *título de propiedad* sobre el apartamento. *Id.*

Sobre la titularidad, la Ley de Condominios establece una distinción en la responsabilidad del pago de cuotas de mantenimiento cuando quien adquiere el título es un adquirente voluntario o involuntario. En tal sentido, establece que "el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude". 31 LPRA sec. 1923e. Por su parte, el adquirente involuntario solo responde de las deudas por gastos comunes

surgidas y no satisfechas durante los seis (6) meses anteriores al momento de adquirir la propiedad, ello sujeto a excepciones respecto a intereses, penalidades o derramas. *Id.* El Tribunal Supremo ha definido al adquirente voluntario como aquella persona que luego de ejercer su criterio en el curso usual de los negocios, deliberadamente adquiere el bien inmueble porque le resulta un buen negocio. *Consejo de Titulares del Condominio Centro Internacional de Mercadeo Torre II, supra,* pág. 420.

### D. Enriquecimiento injusto

La doctrina de enriquecimiento injusto establece que nadie puede enriquecerse a expensas de otra persona sin que exista alguna causa que justifique el enriquecimiento. *Ortiz Andújar v. ELA,* 122 DPR 817, 822 (1988). Cuando la ley no contempla una acción para otorgar un remedio en situaciones en las que se produce un desplazamiento en el patrimonio de una persona que solo beneficia a otra parte, ello sin justificación o razón alguna, surge la reclamación por enriquecimiento injusto. J. Puig Brutau, *Fundamentos de Derecho Civil,* Barcelona, Bosh 1ra. ed. 1983, Tomo II, Vol. III, pág. 44.

Para que proceda la acción por enriquecimiento injusto deben considerarse los siguientes requisitos: (1) la existencia de un enriquecimiento; (2) un empobrecimiento correlativo; (3) una conexión entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique el enriquecimiento; y (5) **la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa.** *Mun. de Quebradillas v. Corp. Salud Lares,* 180 DPR 1003, 1019 (2011), citando a *Hatton v. Mun. de Ponce,* 134 DPR 1001, 1010 (1994), *Ortiz Andújar v. ELA,* 122 DPR 817, 823 (1988). (Énfasis nuestro).

### E. Abuso del derecho

El Tribunal Supremo de Puerto Rico ha reconocido la figura del abuso del derecho como una fuente de responsabilidad. *Producciones Tommy Muñiz v. COPAN*, 113 DPR 517, 528 (1982). Esta causa de acción protege el ejercicio ilegítimo de un derecho "cuando el titular excede manifiestamente los límites impuestos por la buena fe o por el fin social o económico de ese derecho". *Id.*, págs. 528-529, citando a *Velilla v. Pueblo Supermarkets, Inc.*, 111 DPR 585, 588 (1981). La finalidad de esta figura es impedir que el texto de la ley sea utilizado para amparar actos contrarios a la realización de la justicia y que frente al contenido ético y al espíritu objetivo de la norma legal no prevalezcan las maniobras tendentes a lograr un resultado distinto al perseguido con ella. *Soriano Tavárez v. Rivera Anaya*, 108 DPR 663, 673-674 (1979).

### III.

En el primer error señalado por la parte apelante, esta alega que el TPI erró al desestimar su segunda causa de acción. Sostiene que en virtud de las doctrinas de abuso del derecho y enriquecimiento injusto la parte apelada es responsable del pago de las aportaciones a gastos comunes correspondientes al Apartamento 431. Sin embargo, de los hechos alegados se desprende que no se cumplen los requisitos necesarios para que proceda una reclamación bajo estas doctrinas.

Como indicamos anteriormente, la jurisprudencia ha establecido que para que una reclamación de enriquecimiento injusto sea viable deben concurrir: (1) un enriquecimiento; (2) un empobrecimiento correlativo; (3) un nexo causal entre ambos; (4) ausencia de causa que justifique el enriquecimiento; y (5) la inexistencia de un precepto legal que provea otro remedio. *Mun. de Quebradillas*, supra, pág. 1019. El quinto elemento —la inexistencia de un remedio legal específico— es de vital importancia, pues la

acción por enriquecimiento injusto es de carácter estrictamente subsidiario. *SLG Sánchez v. SLG Valentín*, 186 DPR 503, 526 (2012), citando a E. Fontánez Torres, *Obligaciones y Contratos*, 75 Rev. Jur. UPR 245, 258 (2006). En este caso, aun si se estableciera, lo cual no se hizo, que la parte demandada obtuvo algún beneficio y que la apelante sufrió un correlativo detrimento, el propio relato de los hechos demuestra que la apelante cuenta con un remedio específico provisto por ley para reclamar su alegado derecho.

La Ley de Condominios contempla un mecanismo procesal particular para atender este tipo de reclamación, lo que excluye la aplicación de la doctrina de enriquecimiento injusto. En otras palabras, no se configura el requisito de inexistencia de precepto legal que excluya la acción, lo que hace improcedente recurrir a este remedio subsidiario. En vista de ello, el TPI actuó correctamente al desestimar la causa de acción por enriquecimiento injusto.

Por otro lado, la parte apelante alega en su *Demanda Enmendada* que los apelados son responsables civilmente bajo la doctrina de abuso del derecho por no haber completado el proceso de ejecución de hipoteca en el caso Civil Núm. ECD 2009-1197, ello a pesar de tener una orden para que se celebre la venta del Apartamento 431 en pública subasta desde el 13 de enero de 2013. La inacción de los apelados al no ejecutar la sentencia contra los titulares del apartamento no constituye un ejercicio abusivo del derecho que los haga responsables civilmente frente a los aquí apelantes. Aunque el TPI en su sentencia reconoce que "pudiera parecer irrazonable el tiempo tan extenso que ha transcurrido desde la sentencia final", ello de por sí no constituye razón suficiente para determinar que los apelados han incurrido en un abuso del derecho por no ejecutar la orden. En cualquier caso, dicho reclamo no puede ser traído ante nuestra consideración por un tercero que carece de

legitimación por no haber sido parte en el pleito antes citado y tampoco ser el titular del derecho que no ha sido ejercido.

En consecuencia, concluimos que el TPI actuó correctamente al desestimar la segunda causa de acción por enriquecimiento injusto y abuso del derecho.

El segundo y tercer error, por estar estrechamente relacionados entre sí, serán discutidos conjuntamente. En esencia, ambos señalamientos de error planteados por la parte apelante se refieren a una misma controversia: la determinación del TPI de descartar las admisiones y promesas de pago efectuadas por los apelados, al concluir que dichas manifestaciones escritas constituían un mero error, y la subsiguiente desestimación sumaria de la primera causa de acción bajo el razonamiento de que no existía evidencia de transferencia de título. La parte apelante sostiene que tales expresiones y manifestaciones de voluntad, independientemente de la prueba sobre el traspaso de dominio, son suficientes para generar responsabilidad civil.

En el presente caso, la revisión de este Tribunal es de *novo*, por lo que corresponde examinar el expediente con arreglo a los criterios establecidos en la Regla 36 de Procedimiento Civil y la jurisprudencia aplicable. Conforme a la citada regla, la parte que presenta una moción de sentencia sumaria asume la carga inicial de demostrar, mediante prueba admisible, que no existe controversia real y sustancial sobre hechos materiales y que procede la sentencia a su favor. Solo entonces pasa al oponente la carga de demostrar la existencia de una controversia de hechos que justifique la continuación del pleito.

La moción de sentencia sumaria fue presentada por la parte apelada, quien fundamentó su moción en que no existía prueba que acreditara la transferencia de título del apartamento y que, por ende, no procedía imponer responsabilidad civil por el pago de las cuotas

de mantenimiento adeudadas. A esos efectos, la parte apelada alegó que las admisiones y manifestaciones escritas, en las que reconocían la deuda y se comprometían a saldarla, constituían un error porque estos no han recibido el título de la propiedad mediante la ejecución de la hipoteca o por venta privada.[12]

Como se discutió anteriormente, la responsabilidad del pago de cuotas de mantenimiento recae sobre quien tenga la titularidad de la propiedad, por lo tanto, para que el parte apelante pudiera sostener su reclamación, era indispensable acreditar que los apelados eran titulares del inmueble.

De la prueba presentada en el expediente no surge evidencia que demuestre la transferencia de dominio a favor de los apelados. Por el contrario, de la propia *Demanda Enmendada* surge que el que los señores Ríos Alvarado y Rivera Alvarado, titulares registrales del apartamento, optaran por entregarlo voluntariamente durante el proceso de quiebra ("*surrender*"), únicamente tuvo el efecto de que quedaran impedidos de interferir u oponerse a que los acreedores hipotecarios obtuvieran el título y la posesión del Apartamento 431, sin que ello significara que el título se hubiera transmitido a los apelados.

Por lo cual, resulta forzoso concluir que, con la prueba que obra en el expediente, y ante la ausencia de prueba sobre un elemento esencial en la causa de acción, siendo la titularidad un factor determinante para efectos de imponer la obligación de pagar las cuotas de mantenimiento, no se cometieron los errores señalados por la parte apelante.

En cuanto al planteamiento del apelante de que el TPI erró al dictar sentencia sumaria sin que se hubiera completado el descubrimiento de prueba, el apelante se limitó a invocar la falta de

---

[12] Véase Anejo 1 en la Entrada #14 de SUMAC del TPI.

conclusión del descubrimiento de prueba como argumento general contra la sentencia sumaria, sin identificar qué prueba específica pendiente podría alterar el análisis sobre la procedencia de las causas de acción reclamadas. Es preciso indicar que la parte apelada presentó una *Moción de Desestimación* el 21 de octubre de 2020, la cual, luego de varios tramites procesales, fue denegada por el TPI por haber sido prematura y por falta de descubrimiento de prueba. No obstante, luego de un amplio descubrimiento de prueba, el TPI estuvo en posición de resolver la *Moción de Sentencia Sumaria.*

Por tanto, al no haber demostrado la parte apelante que la información pendiente de descubrir guardaba relación directa con hechos materiales y determinantes, el TPI no erró al emitir sentencia sumaria.

**IV.**

Por los fundamentos antes expuestos se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones